CREST CHEVROLET-OLDSMOBILE-
CADILLAC, INC., Robert A. Doyle and Marilyn
W. Doyle, Plaintiffs-Appellants,

v.

Roger WILLEMSEN, Betty Willemsen and A.O.
Bauer Glass, Inc. a Wisconsin corporation,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 84–2015. Argued March 4, 1986.—Decided April 10, 1986.*

(Also reported in 384 N.W.2d 692.)

For the defendants-respondents-petitioners there were briefs by *Paul G. Bonneson* and *Riemer Law Office,* Delavan, and oral argument by *Mr. Bonneson.*

For the plaintiffs-appellants there was a brief by *Patrick J. Hudec* and *Greenwald, Maier & Hudec, P.C.,* East Troy, and oral argument by *Patrick J. Hudec.*

LOUIS J. CECI, J.   This is a review of an unpublished decision of the court of appeals, dated May 15, 1985, which summarily reversed the judgment of the circuit court for Walworth county, John J. Byrnes, reserve judge. In dismissing the complaint, the circuit court held that the defendants did not act unreasonably in diverting surface water from their property onto plaintiffs' property. The court of appeals ruled that the diversion was unreasonable. We affirm the decision of the court of appeals.

The primary issue is whether the petitioners, Roger and Betty Willemsen, owners of A. O. Bauer Glass, Inc. (collectively, Bauer Glass) are liable for damages caused to the property of Crest Chevrolet-Oldsmobile-Cadillac, Inc. and Robert and Marilyn Doyle (collectively, Crest) under the reasonable use doctrine adopted by this court in *State v. Deetz,* 66 Wis.

2d 1, 224 N.W.2d 407 (1974). We hold that Bauer Glass acted unreasonably in diverting the flow of surface water from its property onto Crest's parcel. Bauer Glass is, therefore, liable to Crest for damages as a result of the surface water diversion. We also determine that although there is a general duty to mitigate avoidable consequences of harm caused by the creation of an intentional nuisance, Crest did not react unreasonably to the accumulation of surface water on its parcel.

The parties have stipulated to the facts leading up to this litigation. Crest and Bauer Glass own adjoining parcels of land in Delavan, Wisconsin. The Bauer Glass parcel lies immediately to the west of the Crest parcel. Prior to 1979, the Bauer Glass parcel was at a lower elevation than the Crest parcel. Historically, surface water flowed from the east across the Crest parcel and onto the Bauer Glass parcel, where the water either percolated into the ground or flowed to the north and northwest off the Bauer Glass parcel.

In 1979, Roger and Betty Willemsen purchased the undeveloped and unimproved Bauer Glass parcel with knowledge that the land was low in relation to properties to the east and that surface water generally accumulated on the Bauer Glass parcel. They then undertook to develop the parcel and to rectify the surface water problem by adding landfill to the property. When the landfill operation was complete, the Bauer Glass parcel stood at an elevation higher than any portion of the Crest parcel. The development also included installing a storm sewer system on the Bauer Glass parcel at a cost to Bauer Glass of $68,348.94, which included the cost to Bauer Glass of extending the city of Delavan storm sewer system to its property and to within several feet of the Crest parcel. Bauer Glass in-

vited Crest to participate in the project, specifically, by installing storm sewers on the lower portion of the Crest parcel at a cost to Crest of approximately $9,000, but Crest declined to join. The record reflects that Bauer Glass told Crest of the likelihood of surface water diversion onto the Crest parcel as a result of the Bauer Glass development operation.

There had been only minor puddling and no flooding on the Crest property prior to the Bauer Glass development. After completion of the development, however, surface water accumulated on the Crest parcel during periods of heavy precipitation or melting snow. The combination of the higher elevation of the Bauer Glass parcel in relation to the Crest parcel and the absence of a storm sewer serving the Crest parcel resulted in a damming effect on the Crest property of the historical flow of the surface water from the Crest and other east-lying parcels onto the Bauer Glass parcel. Water had to be pumped off the Crest parking lot as a result of the flooding, according to the parties' respective statements of facts.

The parties stipulated that Crest sustained damages in the amount of $4,500 to the west portion of its parking lot as a result of the flooding. This amount represents asphalt resurfacing costs incurred by Crest. In addition, Crest was ordered by the circuit court, which issued an alternative writ of mandamus, to connect its parcel to the Bauer Glass storm sewer system in order to avoid further damages to its parking lot. The cost to Crest for such connection was $11,620. The parties stipulated that Crest sustained a total of $16,120 in damages, representing the amount necessary to abate the nuisance and resurface the parking lot.

Bauer Glass denied liability for the accumulation of standing water on the Crest parcel caused by the development of its own parcel. Crest initially filed a complaint on January 12, 1981, seeking damages, and amended its complaint several times thereafter. Bauer Glass answered by asserting eight affirmative defenses, including Crest's failure to mitigate damages, and five counterclaims, all of which were dismissed by Judge Byrnes in an order and partial summary judgment filed March 15, 1982.

In a decision filed June 18, 1984, the circuit court denied Crest's request for compensatory damages in the amount of $16,120. The court cited the $68,348.94 sum which Bauer Glass had expended to extend the Delavan storm sewer system to Bauer Glass's property in order to dispose of the surface water on its lot and noted that Bauer Glass had given Crest the opportunity to connect to the system. Bauer Glass was merely developing its property for business purposes as it had a legal right to do, the circuit court reasoned; it had "no duty to maintain its lot in the form of a neighborhood pond or catch basin." The court saw "no reason why Bauer [Glass] should have to stand the expense of Crest hooking up to the storm sewer to dispose of surface waters from the Crest lot." The court believed that each parcel owner should be required to stand the expense of hooking up to the sewer system. Although it did not specifically refer to the *Deetz* case in its decision, the circuit court found that any diversion of surface water from the Bauer Glass property onto the Crest property was neither intentional nor unreasonable conduct. Crest's claims for punitive damages and for attorney

fees under sec. 814.025, Stats.,[1] were, therefore, also necessarily denied.

The court of appeals summarily reversed the judgment of the circuit court. Applying the reasonable use doctrine as adopted by this court in *Deetz,* 66 Wis. 2d at 18–19, and as set forth in the Restatement (Second) of Torts, sec. 826(b)(1979), the court of appeals held that Bauer Glass was liable for the $16,120 in damages sustained by Crest. It determined that the Bauer Glass landfill project effectively blocked the normal flow of surface waters as the flow existed prior to the landfill project and was a legal cause of Crest's serious water problems. Because the court of appeals deemed the Bauer Glass conduct to be unreasonable, the court reversed and remanded the matter with instructions to award damages to Crest in the stipulated amount and to consider Crest's claim for punitive damages and attorney fees.

Bauer Glass requests this court to review the court of appeals' determination that its conduct was unreasonable. Bauer Glass states that the court of appeals did not consider the social utility of the development project, which it should have done. It also claims that the court of appeals failed to consider whether Crest mitigated its damages and that Crest's damages should

---

[1] That statute provides in pertinent part:

"**814.025   Costs upon frivolous claims and counterclaims.**
(1) If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees."

be reduced for Crest's failure to do so. Finally, Bauer Glass urges that comparative fault principles be applied in this case to apportion the liability of each party. Because the parties stipulated to the material facts underlying this case, the remaining questions are questions of law. We review questions of law without deference to the lower courts' reasoning. *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 649 (1985).

Bauer Glass first asserts that the court of appeals failed to consider the social utility of the Bauer Glass development in reaching its conclusion that the conduct was unreasonable. Bauer Glass cites *State v. Deetz,* 66 Wis. 2d 1, to support its proposition that the utility of the developer's conduct must be analyzed before a developer's conduct be deemed unreasonable.

In *Deetz,* this court discarded the common enemy doctrine and adopted the reasonable use doctrine regarding the flow of surface waters. Under the former doctrine, surface water was viewed as a common enemy which each landowner was privileged to divert, repulse, or retain, even if some injury was thereby caused to surrounding landowners. *See, Borchsenius v. Chicago, St. Paul, Minneapolis & Omaha R. Co.,* 96 Wis. 448, 450, 71 N.W. 884 (1897). On the other hand, the reasonable use doctrine essentially states that,

> " 'each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.' " *Deetz,* 66 Wis. 2d at 14 (quoting *Armstrong v. Francis Corp.,* 20 N.J. 320, 327, 120 A.2d 4 (1956)).

The reasonable use doctrine is substantially embodied in sec. 822 of the Restatement (Second) of Torts (1979). That section reads:

"**Section 822.   General Rule**

"One is subject to liability for a private nuisance[2] if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
  "(a)   intentional and unreasonable, or
  "(b)   unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities."

Section 822(a) is applicable here. Bauer Glass does not dispute that the accumulation of surface waters onto the Crest parcel was substantially certain to result from its landfill conduct[3] or that its conduct was a legal cause of the harm sustained by Crest. It only contends that the surface water invasion is not unreasonable when the social utility of its development conduct is considered.

---

[2] A private nuisance is an unreasonable interference with the interests of an individual in the use and enjoyment of land. *Krueger v. Mitchell,* 112 Wis. 2d 88, 103, 332 N.W.2d 733 (1983).

[3] Section 825 of Restatement (Second) of Torts (1979) states:

"**Section 825. Intentional Invasion—What Constitutes**
"An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor
  "(a)   acts for the purpose of causing it, or
  "(b)   knows that it is resulting or is substantially certain to result from his conduct."

The unreasonableness of an intentional invasion is set forth in Restatement (Second) of Torts, sec. 826 (1979). That section provides:

> **"Section 826.    Unreasonableness of Intentional Invasion**
>
> "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if
>
> "(a)   the gravity of the harm outweighs the utility of the actor's conduct, or
>
> "(b)   the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible."

Section 826(a) was the focus of our application of the reasonable use doctrine in *Deetz,* 66 Wis. 2d at 19. In that case, Deetz, a landowner, sought to develop for residential purposes a large area of land on a bluff overlooking a lake. The development project exacerbated what had previously been only minor erosion and runoff from the bluff into the lake below. The lower-lying property owners brought suit to enjoin the development project, which had rendered the lake unnavigable in several areas because of the increased accumulation of sand and sediment. After determining that the evidence was prima facia proof of the gravity of the harm, we remanded to the circuit court for its consideration of the utility and social value of Deetz's conduct. *Id.* at 20–21.

Crest and Bauer Glass agree that sec. 826(a) of the Restatement (Second) of Torts is inapplicable here. Crest does not maintain that the gravity of the harm caused by Bauer Glass's property development outweighs the utility of its conduct. Crest instead asserts

under sec. 826(b) that the harm caused by Bauer Glass's conduct is serious and that the financial burden to Bauer Glass for compensating for such harm would not have rendered infeasible the continuation of the development project. Bauer Glass argues that a correct application of sec. 826(b) must include an analysis of the social utility of its conduct.

Because *Deetz* dealt only with the application of sec. 826(a), we are at liberty to consider whether sec. 826(b) requires a consideration of the social utility of the defendant's conduct in creating the surface water invasion. We note that sec. 826(b) makes no express reference to such a consideration; if social utility is a consideration, it must be implied from the application of the sec. 826(b) test. We find, however, nothing inherent in the sec. 826(b) test which dictates that the fact finder must undertake a social utility analysis of an actor's conduct in order to reach a determination of the reasonableness of that conduct.

The first element of the sec. 826(b) test—whether the harm caused by the conduct is serious[4] —asks the fact finder to consider the quality of the harm sustained by Crest. We look, as the court of appeals did, to sec. 827 of the Restatement (Second) of Torts (1979), for factors which bear upon the seriousness of the harm. That section sets forth:

[4] We note, as the court of appeals did, that Restatement (Second) of Torts, sec. 826(b) (Tent. draft No. 18, 1972), provided that an intentional invasion would be unreasonable if the harm caused by the invasion were "substantial." In the Restatement (Second) of Torts, sec. 826(b) (1979), the word "substantial" was changed to "serious."

"Section 827. Gravity of Harm—Factors Involved

"In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

"(a)   The extent of the harm involved;

"(b)   the character of the harm involved;

"(c)   the social value that the law attaches to the type of use or enjoyment invaded;

"(d)   the suitability of the particular use or enjoyment invaded to the character of the locality; and

"(e)   the burden of the person harmed of avoiding the harm."

Although the sec. 827 factors help to define the gravity of harm under sec. 826(a), we find that they are no less pertinent to an inquiry into whether the harm sustained by a nuisance victim is serious for purposes of sec. 826(b). The factors listed in sec. 827 are not exhaustive. The fact finder may consider other relevant factors in addition to those listed.

Applying the sec. 827 factors, we hold that Crest sustained serious harm as a result of the intentional invasion of surface waters caused by Bauer Glass's development project. Regarding the extent of the harm involved, the record includes photographs of the flooding which occurred on the west portion of the Crest parking lot. The parties stipulated that that portion of the lot sustained damages of $4,500, reflecting the cost of resurfacing the lot's asphalt surface, which had cracked from the water accumulation. The character of the harm also suggests its seriousness; the accumula-

tion of surface water constituted a physical invasion to the Crest parcel and rendered the affected portion of the lot difficult if not impossible to utilize during periods of heavy precipitation or melting snow. There is little doubt that the law does not disfavor the use to which the Crest property was put: a lawful commercial venture. There is significant social value to commercial enterprises such as the one in which Crest engaged.

The record does not reflect any lack of suitability of Crest's commercial venture in relation to its location. There is nothing to suggest that the Crest enterprise creates an eyesore, that it causes a zoning difficulty for the city of Delavan, or that the land is inherently unsuitable for the use to which it is being put.

Crest has shouldered a significant burden in an attempt to avoid the harm. The parties stipulated that Crest expended $11,620 in response to an alternative writ of mandamus issued by the circuit court to "hook up" to the Bauer Glass storm sewer system. Even if Crest had not been so ordered, Bauer Glass estimates that Crest could have avoided the harm by expending $9,000 at the time when Bauer Glass initially invited Crest to hook up to its system. In either event, Crest faced a significant burden to maintain the status quo of its property, that is, to avoid the harm of the Bauer Glass development.[5]

---

[5] A close corollary of analyzing the burden to Crest of avoiding the harm is Crest's ability to mitigate its damages. Bauer Glass argues that if Crest's harm is found to be serious, recoverable damages be reduced to $9,000, representing the amount which Crest could have expended to hook up to the Bauer Glass sewer system

■

We also find that the financial burden to Bauer Glass of compensating Crest for the harm it sustained would not have rendered the continuation of Bauer Glass's conduct infeasible. This is the second element of the sec. 826(b) test. Evidence in the record indicates that Roger and Betty Willemsen paid $201,000 to purchase the Bauer Glass parcel and spent over $68,000 to install a storm sewer system. By its own estimate, Bauer Glass could have avoided the serious harm sustained by Crest by expending $9,000 to hook up a storm sewer system along its common property line with Crest. The stipulated harm sustained by Crest is $16,120, which represents Crest's cost of hooking up to the Bauer Glass storm sewer system and its cost of resurfacing a portion of its parking lot. We agree with the court of appeals that the payment of $16,120 in damages to Crest would not have rendered infeasible a project on which Bauer Glass had previously expended approximately $269,000. Either figure, $9,000 or $16,120, represents only a fraction of the total cost of the Bauer Glass development and would not have kept Bauer Glass from proceeding with the development of its property. Indeed, Bauer Glass does not argue that the financial burden of compensating Crest for the harm it sustained would have been prohibitive in relation to its continuation of the development project.

■

Because we find that Crest suffered serious harm caused by the intentional invasion of surface water stemming from Bauer Glass's conduct' and because

---

when initially invited to do so. We discuss Bauer Glass's mitigation argument *infra*.

compensating for the harm sustained would not have rendered completion of the project infeasible, we find that the invasion of surface water caused by Bauer Glass's conduct was unreasonable. We also find that applying the sec. 826(b) test does not require a social utility analysis of the developer's conduct. The court of appeals did not err, therefore, in excluding a consideration of the social utility of Bauer Glass's conduct from its sec. 826(b) analysis.

We note that a social utility analysis of a defendant's conduct is expressly undertaken when the sec. 826(a) test is employed. Section 826(a) compares the gravity of plaintiff's harm with the social value of the actor's conduct and is more properly applied whenever the suit is for an injunction prohibiting the intrusive activity, as in *Deetz. See,* Restatement (Second) of Torts, sec. 826, comment f, at 123 (1979). An action for damages concedes that an actor's invasion-causing conduct might have some social utility. But to conclude that an actor's conduct is socially useful does not assist a fact finder in conclusively determining, in an action for damages, whether certain conduct is unreasonable. Even if the development of the Bauer Glass parcel is considered socially useful, an inquiry into the existence of serious harm and the feasibility of continuing certain activity if the harm is compensated must still be undertaken. *See, e.g., CEW Mgmt. Corp. v. First Fed. Savings & Loan,* 88 Wis. 2d 631, 634, 277 N.W.2d 766 (1979). In other words, a fact finder must still determine the reasonableness of an actor's conduct in relation to the plaintiff, even if the conduct has social utility.

Although we hold that an application of the Sec. 826(b) test does not require an express consideration of the social utility of a defendant's conduct, we note that a close reading of the relevant comments to the cited Restatement sections indicates that at least one component of a social utility analysis is subsumed in the Sec. 826(b) test. Section 828(c) of the Restatement provides:

> "Section 828. Utility of Conduct—Factors Involved
>
> "In determining the utility of conduct that causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:
>
> " . . .
>
> "(c) the impracticability of preventing or avoiding the invasion."

In discussing the impracticability of avoiding the invasion, comment h to Sec. 828 states that,

> "[i]t is only when an intentional invasion is practicably unavoidable that one can be justified in causing it; and even then, he is not justified if the gravity of harm is too great. An invasion is practicably avoidable if the actor by some means can substantially reduce the harm without incurring prohibitive expense or hardship." Restatement (Second) of Torts, sec. 828, comment h (1979).

The element of the sec. 826(b) test which requires a determination of the feasibility of continuing certain conduct after compensating for its harm is very similar to subsection (c) of sec. 828.

Bauer Glass next argues that the overall social utility of an actor's conduct should be expressly examined in a sec. 826(b) analysis because of the important policy underpinnings of the reasonable use doctrine in effecting contemporary social goals. Bauer Glass cites to *Deetz,* wherein we said that the reasonable use doctrine evidences a retained policy of favoring land improvement and development. *Deetz,* 66 Wis. 2d at 20. But while the reasonable use doctrine may embrace a policy of land development and improvement, it must also embrace a concomitant policy, namely, that society has a strong interest in maintaining developed land without impairing an owner's use and enjoyment of it, whether the use be personal or economic. As this court said in *Prah v. Maretti,* 108 Wis. 2d 223, 237, 321 N.W.2d 182 (1982), "the policy of favoring unhindered private development in an expanding economy is no longer in harmony with the realities of our society. . . . The need for easy and rapid development is not as great today as it once was. . . ."

A consideration of the social utility of a defendant's conduct is not an express factor in a sec. 826(b) analysis. The reasonable use doctrine, unlike the common enemy doctrine, does not allow a landowner the unlimited privilege to divert surface water from his property onto another's property. The doctrine respects a neighboring landowner's status quo and affords a landowner who has developed his land, like Crest, to be free from the intentional intrusion of surface water on his property which is the result of a de-

fendant's unreasonable conduct and which impairs the use and enjoyment of his land.[6]

Having determined that Bauer Glass's conduct in developing its land was unreasonable insofar as it caused serious harm to Crest and the compensation for the harm was not prohibitive to Bauer Glass's development project, we next consider whether Bauer Glass is liable for the entire $16,120 in damages sustained by Crest. Bauer Glass asserts that Crest's recovery for damage should be reduced because of Crest's failure to mitigate its damages. Bauer Glass cites *Schiro v. Oriental Realty Co.*, 272 Wis. 537, 76 N.W.2d 355 (1956), to support its proposition.

In *Schiro,* a plaintiff-landowner commenced a nuisance action against an adjoining landowner to recover damages for personal injuries sustained as a result of a fall resulting from a deteriorating concrete retain-

---

[6] The reasonable use doctrine reaches an economically sound result. If Bauer Glass were allowed to cause the accumulation of surface water on Crest's lot, it is probable that the property value of the Crest lot would diminish: flooded property is worth less than nonflooded property. On the other hand, Bauer Glass's property values are almost certain to increase as a result of the improvements to its parcel. It would be unfair, however, to allow Bauer Glass to effect a decrease in Crest's property value as a result of the positive development of its own land. The law should promote the reasonable improvement of a landowner's parcel, but not at the expense of another landowner. The reasonable use doctrine encourages a landowner to solve his surface water problems as long as the solution does not unreasonably decrease the property value of any of his neighbors.

Thus, although the trial court's statement that Bauer Glass had "no duty to maintain its lot in the form of a neighborhood pond or catch basin" is an alluring declaration, Bauer Glass and other property developers have a duty to act reasonably in their property development.

ing wall. A primary issue in *Schiro* was whether contributory negligence principles may act as a defense in a nuisance action in which the underlying conduct was allegedly negligent. *Id.* at 545–47. But this court also identified a minimization principle applicable to nuisance actions where a plaintiff seeks to recover damages resulting from interference with the use and enjoyment of his land.

"This principle is that, if the plaintiff by a reasonable expenditure on his part could have remedied the condition or protected his property, or the enjoyable use thereof, from further damage or interference, and he fails so to do, he cannot hold the defendant liable for the subsequent occurring damage. Such failure by a plaintiff to minimize his damages is a defense in cases of nuisance resulting from intentional as well as negligent acts of a defendant. Prosser, Law of Torts, (2d ed.), p. 424, sec. 74." *Schiro,* 272 Wis. at 549.

There is no question that a nuisance victim has an obligation to avoid the consequences of an intentional or negligent nuisance when it is reasonable to do so. Bauer Glass argues in its brief that its liability for Crest's damages, if any, should be reduced to $9,000, representing the stipulated amount which Crest could have expended to connect its parcel with the Bauer Glass storm sewer system when Bauer Glass initially invited Crest to do so.

Whether Crest could have avoided any consequences of the nuisance is a function of what *reasonable* steps Crest could have taken to mitigate its damages. "[A] plaintiff never is required to do more than to act reasonably under the circumstances." W. Prosser, *Law of Torts,* sec. 91 at 611 (4th ed. 1971). "If

the effort, risk, sacrifice, or expense which the injured person must incur to avoid or minimize the loss or injury is such that a reasonable person under the circumstances might decline to incur it, the injured party's failure to act will not bar recovery of full damages." *Kuhlman, Inc. v. G. Heileman Brewing Co., Inc.,* 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978).

Bauer Glass proposes that Crest's damages be reduced to $9,000, representing the amount which Crest could have initially expended to hook up to the Bauer Glass sewer system. But we decline to hold that Crest's initial rejection of the invitation to mitigate its damages by expending $9,000 was unreasonable. Although a nuisance victim is required to mitigate his damages "when with slight labor, expense and inconvenience he might have prevented [some or all of the damages)," W. Prosser, *Law of Torts,* sec. 91 at 611 (4th ed. 1971), we do not view an expenditure of $9,000 as being insignificant or slight under the facts and circumstances of this case. While an obligation to mitigate damages must include efforts which are reasonable under the circumstances, the efforts need not be substantial in relation to the damages sustained. A court generally will not reduce recoverable damages based upon the expenditure of an amount necessary to minimize damages (here, $9,000) unless such amount is small in comparison to the possible losses. *Sprecher v. Weston's Bar, Inc.,* 78 Wis. 2d 26, 45, 253 N.W.2d 493 (1977). Damages should not be reduced where only " 'a substantial expenditure would have minimized the total loss. . . .' " *Id.* (quoting from 22 Am. Jur. 2d, *Damages,* sec. 37 at 61).

The $9,000 figure is a substantial amount both in relation to (1) the stipulated amount of total damages ($16,120) and (2) the stipulated amount of damages to Crest's parking lot ($4,500). The doctrine of avoidable consequences is not intended to place upon a nuisance victim a substantial effort to minimize his damage, but only a reasonable one.[7] Crest's damages should not be reduced to the $9,000 figure asserted by Bauer Glass.

On the other hand, Crest should be allowed to recover any substantial, reasonable efforts it undertook to minimize the damages caused by Bauer Glass's conduct. Here, the circuit court issued an alternative writ of mandamus which ordered Crest to hook up to the Bauer Glass sewer system, "so as to prevent further damages otherwise resulting from the flow of surface waters. . . ." Crest obeyed the writ and connected a storm sewer system to the Bauer Glass system at a stipulated expense of $11,620. A plaintiff is allowed to recover reasonable expenses which he has incurred in avoiding the consequences of the nuisance. W. Prosser, *Law of Torts,* sec. 90 at 603 (4th ed. 1971). Crest expended the $11,620 in response to a writ issued by the circuit court; Bauer Glass does not suggest that the figure is exaggerated, or that Crest's obedience of the writ

---

[7] The record suggests that Crest took reasonable steps to minimize the harm to its use and enjoyment of land, short of initially hooking up to the Bauer Glass sewer system at a cost of $9,000. Photographs in the record show the flooded portion of the Crest parking lot being pumped after periods of heavy precipitation, suggesting that Crest did more than merely remain idle while water accumulated on its property. The parties do not include any such pumping costs in their stipulated damages, and we, therefore, do not consider the recovery of such costs by Crest.

was unreasonable. Crest may recover the $11,620 expended on abating the nuisance and $4,500 for damages sustained to its parking lot.

Lastly, Bauer Glass urges this court to reverse the decision of the court of appeals because, it argues, comparative fault principles should be applied in an intentional nuisance action in order to apportion the liability of each party. Bauer Glass claims that Crest was negligent with respect to its use and enjoyment of its own land by failing to take reasonable measures to avoid additional damages to its parcel *after* Bauer Glass commenced improving its property in 1979.

By arguing that a comparative fault theory should apply to this case, Bauer Glass is simply attempting to circumvent our earlier mitigation analysis and reapply a mitigation analysis under another name. We have, however, already considered Crest's conduct after the nuisance arose and underscore the fact that Crest's damages are not to be reduced under a mitigation of damages theory.

Because a comparative fault analysis is inapplicable to the facts presented by this case, we do not address Crest's arguments that Bauer Glass failed to raise the comparative fault issue to the circuit court or to the court of appeals.

We reiterate that an analysis of unreasonable conduct under sec. 826(b) of the Restatement (Second) of Torts does not necessitate an express consideration of the social utility of a defendant's conduct; that Bauer Glass's conduct in causing the accumulation of surface water on Crest's property was unreasonable under the test set forth in sec. 826(b); that Crest is entitled to an unreduced award of $16,120 in damages; and that com-

parative fault principles are inapplicable to this case. We affirm the order of the court of appeals, which remanded the matter to the circuit court with instructions to award Crest damages in the stated amount and to address the punitive damages and attorney fees issues raised by Crest which were not initially addressed by the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.