Glen D. HOCKING and Louann Hocking,
Plaintiffs-Appellants,

v.

CITY OF DODGEVILLE, Laurence E. Schmit,
Wallace Rogers, Shaun Sersch, Wendy Sersch
and Germantown Mutual Insurance Company,
Defendants,

Charles C. O'ROURKE, Joan R. O'Rourke,
American Family Mutual Insurance Company
and Amy Crubaugh-Schrank,
Defendants-Respondents.

Supreme Court

*No. 2007AP1754. Oral argument April 15, 2009.*
*—Decided July 9, 2009.*

2009 WI 70

(Also reported in 768 N.W.2d 552.)

681

For the plaintiffs-appellants there was a brief (in the court of appeals) and a reply brief filed by *Sheila S. Kelley, Matthew Allen, Tyler T. Kieler, Christopher D.*

*Stombaugh,* and *Kopp, McKichan, Geyer, Skemp & Stombaugh, LLP,* Platteville, and oral argument by *Christopher D. Stombaugh.*

For the defendants-respondents, Charles C. O'Rourke, Joan R. O'Rourke, and American Family Mutual Insurance Company, there was a brief by *Patricia J. Epstein, Amy B.F. Tutwiler,* and *Bell, Geirhart & Moore, S.C.,* Madison, and oral argument by *Amy B.F. Tutwiler* and *Patricia J. Epstein.*

For the defendant-respondent, Amy Crubaugh-Schrank, there was a brief (in the court of appeals) by *Rick J. Mundt* and *Winner, Wixson & Pernitz,* Madison, and oral argument by *Rick J. Mundt.*

An amicus curiae brief was filed by *Carl A. Sinderbrand, Timothy M. Barber,* and *Axley Brynelson, LLP,* Madison, on behalf of the Wisconsin Builders Association.

An amicus curiae brief was filed by *Paul G. Kent* and *Anderson & Kent, S.C.,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This case is before the court on certification by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2007–08).[1] Glen and Louann Hocking (hereinafter, "the Hockings") brought an action against the City of Dodgeville and a number of individuals for negligence, unlawful taking, and creating and maintaining a nuisance. Relevant to this appeal is the allegation of negligent maintenance of a nuisance against defendants Charles and Joan O'Rourke and Amy Crubaugh-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

Schrank (collectively hereinafter "the defendants").[2] The circuit court concluded that no liability could arise because these defendants did not owe a duty to the Hockings under these circumstances. The Hockings appealed, and the court of appeals certified this case to the supreme court, which we accepted.

¶ 2. The issue presented to us for review is whether the defendants in this case, who are or were uphill landowners from the Hockings, are liable to the Hockings for damages allegedly caused by surface water, i.e., storm water, running from the defendants' property to the Hockings' property. We conclude that the defendants are not liable because, under the circumstances, the defendants have no duty to abate the alleged nuisance.

## I. BACKGROUND

¶ 3. The Hockings purchased their home in 1978, and at that time there were no neighbors nearby. In 1989, Wallace Rogers purchased the land adjacent to the Hockings. Rogers hired Laurence Schmit, a professional engineer, to develop the property as a residential subdivision. In 1991, the land surrounding the Hockings' home, which would include the land uphill from the Hockings, and the streets around the Hockings' property, were developed by Rogers. As a result of Rogers' development, the Hockings' property is now at the bottom of a bowl. Prior to Rogers' development, the

---

[2] A separate appeal with respect to the City of Dodgeville is pending. The circuit court dismissed all claims against the City of Dodgeville, the developer, and the survey engineer because it concluded that those claims were barred by the statutes of repose, pursuant to Wis. Stat. §§ 893.89 and 893.37, given the suit was filed at least ten years after substantial completion of the development. The Hockings did not appeal the circuit court's dismissal against Shaun and Wendy Sersch.

Hockings never had water leakage into their basement, but since this development the Hockings have had significant water problems. The increased water flow allegedly has caused problems with the Hockings' foundation and led to mold. Due to these problems, the Hockings have had to move out of their home.

¶ 4. A civil engineer consultant, Greg Stauder, inspected the Hockings' property and concluded that the increased storm water runoff flowing over the Hockings' property was due to the way in which Rogers developed the land. Because of Rogers' development, the grading around the property has been altered and the land was converted from absorptive agriculture to impervious surfaces, but storm sewers were not installed. The manner in which Rogers developed the land allegedly caused the Hockings' problems.

¶ 5. On February 16, 2007, the Hockings filed an amended complaint[3] against the City of Dodgeville, Wallace Rogers, Laurence E. Schmit and the defendants in this case. The complaint alleged, in part, negligent maintenance of a nuisance. Relevant to this appeal are the defendants who live or once lived at 1104 Roelli Street, Dodgeville, Wisconsin. The 1104 Roelli Street property is adjacent to and directly uphill from the Hockings' property and is one home in the 1991 development of the land surrounding the Hockings' property. Defendant Crubaugh-Schrank lived at 1104 Roelli Street beginning in 1999 and defendants O'Rourke moved to 1104 Roelli Street in 2004. These defendant landowners did not modify the property in any way that could affect water drainage onto the Hockings' property.

¶ 6. The defendants moved the circuit court for summary judgment asserting that they had no duty to

[3] The original complaint was filed on August 22, 2006.

abate this nuisance. The circuit court concluded that, as a matter of law, the defendants could not be liable to the Hockings. It reasoned that the defendants had no duty to abate this nuisance because they were merely "possessors and titleholders in portions of upgrade property from the Hockings." Therefore, no duty to abate this nuisance arose. In addition, the circuit court concluded that even if a duty was owed and the defendants were negligent, liability should be precluded by the application of public policy factors. The Hockings appealed the circuit court's decision. The court of appeals certified the appeal to this court, which we accepted.[4]

## II. STANDARD OF REVIEW

¶ 7. "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Schmidt v. N. States Power Co.,* 2007

---

[4] In its certification, the court of appeals inquired whether this case should be governed by the reasonable use doctrine articulated in *State v. Deetz,* 66 Wis. 2d 1, 224 N.W.2d 407 (1974) or the Restatement (Second) of Torts § 839 (1979), which we referenced in *Milwaukee Metropolitan Sewerage District v. City of Milwaukee,* 2005 WI 8, ¶¶ 73, 85, and nn. 23 & 24, 277 Wis. 2d 635, 691 N.W.2d 658. The court of appeals questioned whether the reasonable use doctrine and § 839 may be in conflict with one another. However, no conflict exists because § 839 specifically references § 822, which we have previously adopted, and the reasonable use doctrine is largely embodied within § 822. *See* Restatement (Second) of Torts § 839 cmt. g (referencing § 822); *Crest Chevrolet-Oldsmobile-Cadillac, Inc. v. Willemsen,* 129 Wis. 2d 129, 138, 384 N.W.2d 692 (1986) (stating "[t]he reasonable use doctrine is substantially embodied in sec. 822"); *Milwaukee Metro. Sewerage Dist.,* 277 Wis. 2d 636, ¶ 25 n.4 (stating "Wisconsin has adopted the Restatement (Second) of Torts § 822").

WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294. This court applies the same standards as those used by the circuit court, and these standards are set forth in Wis. Stat. § 802.08. *Id.* Whether a duty under the circumstances exists and the scope of such a duty are questions of law that we decide de novo. *Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, ¶ 23 n.12, 291 Wis. 2d 283, 717 N.W.2d 17.

## III. ANALYSIS

¶ 8. The Hockings assert that these defendants are liable for negligently maintaining a nuisance, which has allegedly damaged the Hockings' property. The Hockings argue that the circuit court erred by conducting a duty analysis because under Wisconsin law a duty is owed to the world at large, and thus, the defendants owe a duty to the Hockings because they are landowners. In addition, the Hockings also assert that public policy factors do not preclude liability in this case. The defendants on the other hand, argue that a public policy analysis is unnecessary because the circuit court's duty analysis was appropriate. The defendants, relying primarily on *Hoida,* reason that duty is and always has been a prerequisite to negligence, and as a result, duty is a relevant determination in this case. We agree with the defendants and therefore affirm the circuit court's decision with respect to the defendants having no duty to the Hockings to abate this nuisance under the circumstances of this case.

¶ 9. To prevail on their claim of negligent maintenance of a nuisance, the Hockings must first show that the defendants were negligent, which requires that defendants failed to act when they had a duty to act. *See* Wis JI—Civil 1920; *see also* Restatement (Second) of Torts §§ 822, 824, 839 (1979) (discussing nuisance

actions and providing that to prevail, the nuisance must be "otherwise actionable" and the defendant must have a positive duty to act). The analysis of this case centers on duty under the circumstances herein presented.[5]

A. Negligence

¶ 10. We first consider whether the Hockings can satisfy the fundamental elements of negligence. "Wisconsin courts have engaged a four-element analysis to determine whether an actionable claim for negligence has been stated." *Hoida*, 291 Wis. 2d 283, ¶ 23. The four elements are as follows: " '(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach].' " *Id.* (citing *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, ¶ 19, 611 N.W.2d 906).

1. Duty under Wisconsin law

¶ 11. Duty has always been a relevant element in Wisconsin's negligence analysis even though cases have more often been limited by the application of public policy factors. *Nichols v. Progressive N. Ins. Co.*, 2008

---

[5] The concurrence is a mix of well-accepted principles and the chief justice's opinions. While the concurrence prefers to assume duty and evaluate the viability of the claim on the basis of breach, the majority prefers to tackle the issue of duty head-on. Here we conclude that no negligence exists because the Hockings do not satisfy the first element of negligence—duty. Thus, we need not reach the issue of breach.

WI 20, ¶ 36, 308 Wis. 2d 17, 746 N.W.2d 220; *see also Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, 768 Wis. 2d 568, 768 N.W.2d 568 (Roggensack, J., concurring) (discussing duty under Wisconsin negligence law). The prevalence of a public policy factor analysis, however, does not eliminate consideration of the four elements of negligence. *See Hoida*, 291 Wis. 2d 283, ¶ 23 n.12 (reaffirming that there are four elements to a negligence analysis). Our focus in this case centers on the first element of "duty." Under the first element, "duty, involves two aspects: (1) the existence of a duty of ordinary care; and (2) an assessment of what ordinary care requires under the circumstances." *Id.*, ¶ 27 (citing *Hatleberg v. Norwest Bank Wis.*, 2005 WI 109, ¶¶ 17–18, 283 Wis. 2d 234, 700 N.W.2d 15).

¶ 12. While Wisconsin has adopted the minority view from *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99 (N.Y. 1928), which established that everyone owes a duty to the world at large, the duty owed to the world is not unlimited but rather is restricted to what is reasonable under the circumstances. *Hoida*, 291 Wis. 2d 283, ¶¶ 30–32. As a result, Wisconsin courts have in the past precluded negligence actions because a defendant did not owe a duty to the plaintiff under the circumstances. *See Baumeister v. Automated Prods., Inc.*, 2004 WI 148, ¶¶ 18–21, 277 Wis. 2d 21, 690 N.W.2d 1 (concluding that the architect did not have a duty to supervise the construction of a church because the architect's contract stated he had no responsibility for construction of the church); *Hatleberg*, 283 Wis. 2d 234, ¶¶ 19–25 (concluding that a trustee of a bank did not have a duty to review a trust document to ascertain whether it worked for the stated purpose of the trust).

¶ 13. For example, in *Hoida,* we concluded that the plaintiff's claims were precluded because its "claim of a breach [wa]s based entirely on the theory that the defendants' duty of ordinary care under the circumstances required them to undertake certain tasks that we [] concluded ordinary care under the circumstances did not require." *Id.,* ¶ 46. Thus, because there was no duty under the circumstances, no breach occurred, and there was not a viable negligence claim. *Id.* In *Hoida,* we relied on contractual provisions to evaluate the circumstances bearing on the scope of the defendant's duty of ordinary care. *Id.,* ¶¶ 38–39. In the case at hand, we rely on common law doctrines governing surface water to ascertain the defendants' duty of ordinary care under the circumstances.

2. Duty under the circumstances of this case

¶ 14. This case concerns the allegation that uphill landowners have a duty to abate naturally occurring surface water that runs downhill onto the Hockings' property. Although three distinct doctrines—the common enemy doctrine, the civil law rule,[6] and the reasonable use rule—have developed over the years in order to analyze surface water problems, Wisconsin has adopted the "reasonable use" rule. 2 Robert E. Beck et al., *Waters and Water Rights* § 10.03(b)(3) (1991 ed., repl. vol. 2008); 5 Robert E. Beck, *Waters and Water*

---

[6] Wisconsin has not previously utilized the civil law rule. In short, "[i]t provides that drainage must be allowed to follow its natural courses. The upper landowner is not allowed to redirect drainage artificially, and the lower landowner is forbidden to obstruct natural drainage." 5 Robert E. Beck, *Waters and Water Rights* § 59.02(b)(3) (1991 ed., repl. vol. 2006) The purpose is to preserve natural drainage and prohibit one landowner from taking unfair advantage over another. *Id.*

*Rights* § 59.02(b) (1991 ed., repl. vol. 2006). "Over the past sixty years, many states have shifted from the common enemy and civil law rules to the reasonable use rule." *Id.*, § 59.02(b)(7).

¶ 15. Prior to 1974, surface water cases in Wisconsin were governed by the common enemy doctrine. See *State v. Deetz*, 66 Wis. 2d 1, 8–10, 13–16, 224 N.W.2d 407 (1974) (rejecting the common enemy doctrine and adopting the reasonable use rule). The common enemy doctrine provided:

> The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, *is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners* that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow.

*Watters v. Nat'l Drive-in, Inc.*, 266 Wis. 432, 435–36, 63 N.W.2d 708 (1954) (emphasis added). Therefore, under the common enemy doctrine, "each landowner ha[d] a privilege to deal with, dispose of, block, or divert diffused surface water in any manner as he sees fit, without legal liability for the injurious consequences to his neighbors' lands." 5 Beck, *supra*, § 59.02(b)(2).

¶ 16. This court applied the common enemy rule in *Watters* where the defendant constructed a drive-in theater on property that adjoined the plaintiff's property. *Watters*, 266 Wis. at 433. The defendant's property

was such that some water percolated into the soil and the remaining ran off and onto the plaintiff's property. *Id.* However, as a result of the drive-in theater construction, which included facilities, driveways, tile drains, and sewage-disposal facilities, the land was graded and filled up so as to "change the natural contour of said land, which [] caused the artificial and unnatural flow of surface waters" to drain onto the plaintiff's property. *Id.* This drainage caused damage to the plaintiff's roadway and resulted in losing the use of some property. *Id.* This court in *Watters* concluded that "[u]nder the established law of this state[, i.e., the common enemy doctrine,] the plaintiffs have no cause of action for damages caused by drainage of surface waters, either because of the installation of tile drains or by changing the natural flow of such waters." *Id.* at 436.

¶ 17. While this court had applied the common enemy doctrine prior to 1974, in *Deetz*, we rejected that doctrine in favor of the reasonable use rule, which is embodied in the Restatement (Second) of Torts § 822, adopted by this court. *Crest*, 129 Wis. 2d at 138; *Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶ 25 n.4.

¶ 18. In *Deetz*, this court concluded that the reasonable use rule as set forth in the "Restatement of Torts better comports with the realities of modern society than does the common enemy doctrine." *Deetz*, 66 Wis. 2d at 18. Under the reasonable use rule, " 'each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.' " *Id.* at 14 (citation omitted).

693

¶ 19. In *Deetz,* the plaintiff brought an action to abate a nuisance caused by an uphill landowner. *Id.* at 6. The defendant developed land on top of a bluff overlooking Lake Wisconsin. *Id.* Prior to development, the bluff land was used for crops and pasture, and thus the erosion and runoff was minimal. *Id.* However, after construction, one of the roads at the bottom of the bluff was covered by unusual amounts of sand in many places and the downhill plaintiff noticed that substantial sand deltas had formed along the lakeshore and in the lake, which led to a lake that was not navigable in some places. *Id.* The court, in *Deetz,* remanded to the circuit court for a determination of reasonableness. *Id.* at 21. Remand was necessary because the factual record was undeveloped due to the circuit court's dismissal under the common enemy rule. *Id.*

¶ 20. Accordingly, under the common enemy doctrine, no duty and thus no liability arose regardless of the defendants' actions. In other words, under the common enemy doctrine, a landowner was privileged to do with his land what he wanted. *CEW Mgmt. Corp. v. First Fed. Sav. & Loan Ass'n,* 88 Wis. 2d 631, 633, 277 N.W.2d 766 (1979); *see also* 5 Beck, *supra,* § 59.02(b)(2) (discussing the absolute freedom provided by the common enemy doctrine).

██

¶ 21. However, with the adoption of the reasonable use rule we altered a landowner's responsibility. Under this rule, a landowner must use his land reasonably, and a duty to act will arise if the landowner's use of his land that resulted in altering the flow of surface waters is unreasonable. *See* 5 Beck, *supra,* § 59.02(b)(4) (stating that the rule compares benefits and hardships with liability arising when the hardships are unreason-

able under all circumstances).[7] As a result, when the defendant's conduct is unreasonable, that defendant has a positive duty to act to abate the nuisance. A positive duty to act must exist before liability will arise in a failure to abate claim such as the one presented here. *CEW,* 88 Wis. 2d at 635; Wis JI—Civil 1920; Restatement (Second) of Torts § 824 (1979). Conse-

---

[7] The concurrence incorrectly asserts that the reasonable use doctrine applies only to intentional torts and not negligence cases. *Some courts have noted,* " '[r]egardless of the category into which the defendant's actions fall [intentional and unreasonable or negligent, reckless, or abnormally dangerous], the reasonable use rule explicitly, as in the case of intentional acts, or implicitly, as in the case of negligent acts, requires a finding that the conduct of the defendant was unreasonable.' " *DeSanctis v. Lynn Water & Sewer Comm'n,* 666 N.E.2d 1292, 1296 (Mass. 1996) (citing *Pendergrast v. Aiken,* 236 S.E.2d 787 (N.C. 1977)). Moreover, we have found other examples of the rule being utilized in negligence cases. *See, e.g., Franklin County Dist. Bd. of Health v. Paxson,* 787 N.E.2d 59, 66–67 (Oh. Ct. App. 2003), *DeSanctis,* 666 N.E.2d at 1295–97. These examples, however, highlight the inconsistency with which courts around the country apply the rule. For example, in *Franklin County*, an Ohio court considered the reasonable use rule in terms of breach, i.e., a breach occurred if the land was not used reasonably. *Franklin County,* 787 N.E.2d at 66–67. Other courts, however, have failed to delineate where in the analysis the reasonable use rule should be considered and instead preclude liability if the land is used reasonably. *See DeSanctis,* 666 N.E.2d at 1295–97. Today, we simply conclude that given liability cannot arise unless there is a duty, the most sensible place to end the analysis is under duty since the landowner did absolutely nothing but live on his land and let the rain fall down to the earth. We have utilized surface water doctrines to illuminate our analysis, but today we do not apply the reasonable use rule in the traditional sense of weighing the gravity of the harm with the utility of the act. *See Franklin County,* 787 N.E.2d at 66–67.

quently, the defendants here have a positive duty to abate this nuisance only if the use of their property had altered the flow of surface water and was an unreasonable use of their property.

¶ 22. In the case at hand, however, the defendants' conduct did not involve a use of their property that altered the flow of surface water. Therefore, their use is not unreasonable, and they have no duty to abate in the first instance. The defendants merely purchased a home, lived in that home, paid property taxes, and established a tie to the community in which they live. They are living the American dream by owning a home. Their conduct—living in their home—does not deviate from typical behavior. They did not create the flow of rainwater or alter the property so to create this problem on the Hockings' property. The development by Rogers allegedly caused these problems. The defendants, for example, did not create a trench that increased the flow of water to the Hockings' property. The defendants did not point oversized downspouts at the Hockings' property. The defendants did not landscape in such a way so to unreasonably increase water flow to the Hockings' property. Instead, the defendants purchased a home in a development and lived there. The defendants could not reasonably be required to take positive action that would affect rainwater runoff onto the Hockings' property.

¶ 23. Moreover, as a practical matter, the necessary remedy to address the Hockings' problem could not be carried out by these defendants. Even the Hockings' civil engineer asserts that the development of the land by Rogers allegedly caused the nuisance because it converted the land from absorptive agricultural to impervious surfaces, altered the grading around the

696

Hockings' property, and altered the streets surrounding the Hockings' property. According to the Hockings' own expert, the problem should be remedied by the installation of storm sewers, the construction of retention ponds, and the installation of a storm water collection and draining system. These remedies could not possibly be carried out by the defendants—one neighboring landowner in an uphill development. What duty would then exist for the landowners who are uphill from these defendant landowners?

¶ 24. The defendants' conduct in this case is reasonable under the circumstances, and as a result, no positive duty to abate this nuisance arises and the Hockings' claims for maintaining a nuisance cannot survive.

¶ 25. Still, the Hockings and the concurrence assert that a duty is owed to the world at large, and as a result, a duty here is assumed. As we stated above, however, duty is and always has been relevant under Wisconsin law even though cases have predominantly been analyzed under the public policy factors when there has been an assumption that a duty exists. The concurrence would conclude that mere home ownership employs a duty to all who could possibly be affected by the homeowner's property. Such a drastic implication of homeowner liability should not be assumed without further analysis under the circumstances. It is not the homeowner's duty to remedy every possible impact that could occur on a neighboring parcel. Sometimes, there is just no such duty to act under Wisconsin law.

¶ 26. The Hockings assert that by failing to act, one can be liable for continuing a nuisance even if the landowner did not cause the problem. We do not disagree that there are circumstances where liability can be established for failing to abate a nuisance. *See*

697

*Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶¶ 63–74 (referencing the Restatement (Second) of Torts § 839 (1979)). However, no negligence exists in this case because the defendants' conduct did not involve altering the flow of surface water, and therefore, there is no duty to abate. As a result, the Hockings' claim for negligent maintenance of a nuisance cannot survive.

¶ 27. The Hockings spend significant time discussing the application of public policy factors in this case. However, we decline to address the public policy factors and instead resolve this case under a duty analysis because under the circumstances of this case, there is no doubt that the defendants did not have a duty to abate this nuisance.

██ ██

¶ 28. Accordingly, under the reasonable use rule, a duty to act may arise when one uses his or her property unreasonably. If the property is being reasonably used, however, the landowner has no duty to abate the nuisance under the reasonable use rule. In this case, all the defendant landowners reasonably used their property, and as a result, they satisfied their duty of ordinary care under the circumstances.

## IV. CONCLUSION

¶ 29. We have been asked to decide whether the defendants in this case, who are uphill landowners from the Hockings, are liable to the Hockings for damages allegedly caused by surface water, i.e., storm water, running from the defendants' property to the Hockings' property. We conclude that the defendants are not liable because, under the circumstances, the defendants have no duty to abate the alleged nuisance.

*By the Court.*—The order of the circuit court is affirmed.

¶ 30. N. PATRICK CROOKS, J. did not participate.

¶ 31. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I concur in the mandate affirming the circuit court's order granting the defendants' motion for summary judgment and dismissing them from the action. I agree that as a matter of law the defendants are not liable for a negligent failure to abate a private nuisance.

¶ 32. The majority opinion relies on several rationales in concluding that the defendants are not liable, without clearly explaining the relationship between the rationales, without identifying any single rationale as sufficient, and without stating whether all are necessary to conclude that the defendants are not liable.

¶ 33. The majority opinion appears to argue (1) that this is a case of an omission, not an affirmative act, and that in failing to abate the private nuisance (the omission) the defendants are not liable because they had no duty to abate the private nuisance (majority op., ¶¶ 10–22, 24–26); (2) that because the defendants did not create the private nuisance, they are not liable for failing to abate the nuisance (majority op., ¶¶ 22, 26); (3) that the defendants did not unreasonably interfere with the flow of surface water and therefore are not liable under the "reasonable use" doctrine adopted in *State v. Deetz,* 66 Wis. 2d 1, 224 N.W.2d 407 (1974) (majority op., *passim*); and (4) that it is unreasonable to require the defendants to abate the private nuisance in view of the extensive work and costs involved in abating this nuisance (majority op., ¶ 23).

¶ 34. I conclude that the defendants are not liable because the private nuisance is not abatable, meaning that abatement cannot be accomplished without unreasonable hardship or expense. Restatement (Second) of Torts, § 829 cmts e & f.

¶ 35. First I shall set forth what I think is the law applicable to the present case and then I shall point out the errors of the majority opinion's way.

I

¶ 36. The proper approach to this case is to recognize that three discrete areas of tort law converge in the instant case: private nuisance law,[1] negligence law,[2] and the tort liability of a possessor of property.[3] When these three areas of law converge, as they do in the instant case, special rules of law apply.

---

[1] Nuisance long has been treated as its own subject within tort law. *See* Restatement (Second) of Torts § 821D ("Trespass and private nuisance are alike in that each is a field of tort liability rather than a single type of tortious conduct.").

The Restatement (Second) of Torts, as well as leading treatises, address nuisance as a separate topic in the law. *See* Restatement (Second) of Torts, ch. 40 (§§ 821A-840E); 2 Dan B. Dobbs, *The Law of Torts* (2001), ch. 34, at 1319–42; W. Page Keeton et al., *Prosser and Keeton on Torts* (5th ed. 1984) ch. 15, at 616–54.

[2] This court has remarked that although liability for a nuisance may be predicated on negligent conduct, "negligence and nuisance are distinct torts." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 27 n.22, 254 Wis. 2d 77, 646 N.W.2d 777.

[3] *See* Chapter 9, Restatement of the Law (Third) Torts: Liability for Physical and Emotional Harm (Tentative Draft No. 6, March 2, 2009), at xx (stating that "historically, land possessors' duties have been treated as a discrete subject" in the law of tort).

¶ 37. A private nuisance is "a condition or activity which unduly interferes with the use of land."[4] This case involves a private nuisance, in contrast with a public nuisance.

¶ 38. Private nuisances can be intentional or negligent.[5] Thus in the instant case principles of negligence play a role in private nuisance law.

¶ 39. Furthermore, private nuisance law and negligence law are intertwined with special rules that have developed over the years relating to the tort liability of possessors of land. Like nuisance and negligence law, the law relating to the liability of land possessors has been treated as a discrete field of tort law.

¶ 40. These three discrete areas of the law have been synthesized in the Restatement (Second) of Torts in §§ 822-840A. This court has expressly adopted § 822

The Restatement (Second) of Torts includes a separate chapter relating to liability based on the condition or use of land, Restatement (Second) of Torts, ch. 13 (§§ 328E-387). The tentative draft of the Restatement (Third) of Torts similarly uses a separate chapter to "address[] the special case of the duty owed by land possessors." Restatement of the Law (Third) Torts: Liability for Physical and Emotional Harm, at 1 (Tentative Draft No. 6, 2009). Leading treatises follow suit. *See* 1 Dan B. Dobbs, *The Law of Torts* 587–630 (2001) (relating to liability for owners and occupiers of law); W. Page Keeton et al., *Prosser and Keeton on Torts* 386–450 (5th ed. 1984) (same).

[4] *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 24, 277 Wis. 2d 635, 691 N.W.2d 658 (quotation marks and citation omitted).

*See also Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶ 27 ("[A] private nuisance is broadly defined to include any disturbance of the enjoyment of property." (quotation marks and citation omitted)).

[5] *Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶ 33 ("Liability for a nuisance may be based upon either intentional or negligent conduct." (citations omitted)).

(stating the general rule subjecting a person to liability for a private nuisance)[6] and has referred to and followed other sections, including § 824 (describing the conduct essential to liability for a private or public nuisance)[7] and § 839 (stating the rule governing liability for a possessor of land who fails to abate an artificial condition),[8] in deciding nuisance cases. I would use our prior cases that rely on the Restatement to decide the present case.

¶ 41. The inquiry under the Restatement (and our prior case law) begins with Restatement (Second) § 822.[9]

¶ 42. Section 822 is the Restatement's general rule governing liability for a private nuisance.[10] Section 822 provides in full as follows:

---

[6] *State v. Deetz,* 66 Wis. 2d 1, 16, 224 N.W.2d 407 (1974). *See also Milwaukee Metro. Sewerage Dist.,* 2005 WI 8, ¶ 25 n.4, 277 Wis. 2d 635, 691 N.W.2d 658 ("Wisconsin has adopted the Restatement (Second) of Torts § 822 (citations omitted)); *CEW Mgmt. Corp. v. First Fed. Sav. & Loan Ass'n,* 88 Wis. 2d 631, 634–45, 277 N.W.2d 766 (1979) (stating that the court specifically adopted § 822 in *Deetz*).

[7] *Milwaukee Metro. Sewerage Dist.,* 277 Wis. 2d 635, ¶¶ 35, 48 (following § 824); *CEW Mgmt. Corp. v. First Fed. Sav. & Loan Ass'n,* 88 Wis. 2d 631, 635, 277 N.W.2d 766 (1979) (same).

[8] *See Milwaukee Metro. Sewerage Dist.,* 277 Wis. 2d 635, ¶¶ 73 & n.23, 76 n.24, 79, 85 (following, without explicitly adopting, § 839 in determining whether the City of Milwaukee could be liable for a private nuisance due to its failure to regularly dig up and inspect buried water mains).

[9] *See Milwaukee Metro. Sewerage,* 277 Wis. 2d 635, ¶ 32 (relying on § 822 as a statement of the elements necessary for liability in a private nuisance case).

[10] Section 822 is titled "General Rule" and is the first section appearing in a Topic titled "Private Nuisance: Elements of Liability."

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

¶ 43. An action for the negligent failure to abate a private nuisance falls within § 822(b) rather than § 822(a). Under § 822(b), a person is subject to liability for the negligent failure to abate a private nuisance if three elements are met: (1) there is "an invasion of another's interest in the private use and enjoyment of land,"[11] (2) the person's conduct is "a legal cause of [the] invasion," and (3) the invasion is "otherwise actionable under the rules governing liability for negligent conduct."[12]

¶ 44. The first two elements are not at issue in the present case; the third element relating to liability for

---

[11] This first element simply requires that a private nuisance exist. Restatement (Second) § 821D states that "[a] private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land."

[12] *See Milwaukee Metro. Sewerage Dist.*, 2005 WI 8, ¶ 63, 277 Wis. 2d 635, 691 N.W.2d 658:

Having determined that the only actionable claim in this case is one for negligently failing to abate a nuisance, we lastly examine whether the circuit court properly granted summary judgment in this case. As we previously discussed, in order to prevail on a claim of nuisance based on negligence, the plaintiff must prove the following elements: 1) The existence of a private nuisance—the interference with another's interest in the private use and enjoyment of land; 2) The defendant's conduct is the legal cause of the

negligent conduct is at issue. I therefore focus my attention on the third element pertaining to whether a defendant's conduct is actionable under the rules governing liability for negligent conduct.

¶ 45. The comments to § 822 state that a court should look to Restatement (Second) § 824 for the standard used to determine "the type of conduct necessary to liability under the rule stated in [§ 822]." *See also CEW Mgmt. Corp. v. First Fed. Sav. & Loan Ass'n,* 88 Wis. 2d 631, 635, 277 N.W.2d 766 (1979) (stating that § 824 "is controlling in the determination of conduct that comes within the purview of sec. 822").

¶ 46. Section 824 (titled "Type of Conduct Essential to Liability") provides in full as follows:

> The conduct necessary to make the actor liable for either a public or a private nuisance may consist of
>
> (a) an act; or
>
> (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.

¶ 47. The instant case may be viewed as a failure to act under § 824(b). If so, I must determine whether under the circumstances of the case the defendants were under a duty to take positive action to abate the invasion of the private interest.

¶ 48. Sections 838–840 of the Restatement (Second) set forth "the circumstances under which the law imposes a duty on a person to take positive action for

---

private nuisance; and 3) The defendant's conduct is otherwise actionable under the rules governing liability for negligent conduct, including notice.

the protection of another and subjects him to liability if he fails to meet the standard of action required in the particular case."[13]

¶ 49. I therefore focus on §§ 838–40 to determine whether any of these provisions impose upon the defendants in the present case a duty to take positive action to abate the private nuisance.

¶ 50. Restatement (Second) of Torts § 839, entitled "Possessor Who Fails to Abate Artificial Condition" is relevant to the instant case. The plaintiffs allege that the defendants are liable for their failure to abate a nuisance resulting in part from an artificial condition on the defendants' land. This court has relied upon § 839 in *Milwaukee Metropolitan Sewerage District v. City of Milwaukee,* 2005 WI 8, ¶¶ 73 & n.23, 76 n.24, 79, 85, 277 Wis. 2d 635, 691 N.W.2d 658.

¶ 51. Section 839 of the Restatement imposes a duty on a possessor of land[14] to take reasonable steps to abate an artificial condition on land causing a nuisance. The scope of the duty depends on the circumstances. A possessor of land has a duty to abate an abatable artificial condition when: (a) the land possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, (b) the land possessor knows or should know that it exists without the consent of those affected by it, and (c) the land possessor has had a reasonable opportunity to take reasonable steps to abate the condition or to protect the

---

[13] Restatement (Second) § 824 cmt. e. *See also* Scope Note to Restatement (Second) of Torts ch. 40, Topic 4 (stating that ch. 40, Topic 4, Title B, which encompasses §§ 838–840A, "deals with liability for failure to act").

[14] The term "possessor of land" is defined in Restatement (Second) § 328E.

affected persons against it. If a land possessor fails to take reasonable steps under the circumstances stated in § 839, the land possessor's conduct is actionable.

¶ 52. Restatement (Second) of Torts § 839 provides in full as follows:

> A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
>
> (a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
>
> (b) he knows or should know that it exists without the consent of those affected by it, and
>
> (c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it. (Emphasis added.)

¶ 53. I will discuss only those aspects of § 839 that are at issue and apply specifically to the present case.

¶ 54. First, if the particular artificial physical condition is not abatable, a possessor of land who did not create the artificial condition is not liable. Restatement (Second) § 839 cmt. e. An abatable condition is "one that reasonable persons would regard as being susceptible of abatement by reasonable means." Restatement (Second) § 839 cmt. f. An artificial condition is not abatable unless abatement can be accomplished without unreasonable hardship or expense. *Id.* This provision was cited with approval in *Milwaukee Metropolitan Sewerage District,* 277 Wis. 2d 635, ¶ 73 n.23.

¶ 55. Second, a possessor of land may be liable under Restatement § 839 for failing to abate a private nuisance resulting from an abatable artificial condition

on the possessor's land even though the possessor played no role in creating the artificial condition or the nuisance. The comments to § 839 explain that "a vendee or lessee of land upon which a harmful physical condition exists may be liable under [§ 839] for failing to abate it after he takes possession, even though it was created by his vendor, lessor or other person and even though he had no part in its creation." Restatement (Second) § 839 cmt. d. Liability under § 839 for the failure to abate an artificial condition on land causing nuisance to another "is not based upon responsibility for the creation of the harmful condition." Restatement (Second) § 839 cmt. d.

¶ 56. Third, Restatement § 839 imposes a *duty* of due care on a possessor of land. The scope of the duty (that is, the standard of care) is "to do what is practicable and reasonable under the circumstances" to abate a private nuisance resulting from an artificial condition on the possessor's land. Restatement § 839 cmt. e. A land possessor's liability under Restatement (Second) § 839 is based "upon the fact that [a possessor of land] has exclusive control over the land and the things done upon it and should have the responsibility of taking reasonable measures to remedy conditions on it that are a source of harm to others." Restatement (Second) § 839 cmt. d.

¶ 57. This case might be decided on a number of factors under § 839, but it is clear under the record in the instant case that the artificial condition at issue here is not abatable and that the defendants have not violated their duty to do what is practicable and reasonable under the circumstances. Even viewed most favorably to the plaintiffs, the record does not support the conclusion that the defendants could have abated the nuisance to the plaintiffs by using reasonable

means.[15] As a matter of law, the defendants therefore did not breach their duty as possessors of land to do what is practicable and reasonable under the circumstances to abate a private nuisance resulting from an artificial condition on the land that they possess.

¶ 58. For these reasons, I agree with the majority opinion that the defendants are not liable for the private nuisance in the present case.

## II

¶ 59. Here's why the majority opinion has lost its way:

¶ 60. First, the majority opinion relies too heavily on classifying the defendants' conduct as an omission to act and applying what it considers applicable rules of negligence law in determining that the defendants are not liable.[16]

---

[15] *See* majority op., ¶ 23.

[16] Although the majority opinion distinguishes omission and commission in ordinary negligence law and applies the distinction to the present case to require a duty, the jury instruction for negligence makes no distinction between acting and failing to act. Wis JI—Civil 1005 (titled "Negligence: Defined") states that "[a] person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property."

In contrast, Wis JI—Civil 1920 (titled "Private Nuisance: Negligent Conduct") follows the language of Restatement (Second) of Torts § 824 (referring to a duty to take positive action) in private nuisance actions premised on negligent conduct. Wis JI—Civil 1920 states that "[a] person is not using ordinary care and is negligent, if the person, without intending to do harm, *acts (or fails to act under circumstances in which (he) (she) is*

¶ 61. As I have written previously, the distinction between omission and commission is a nebulous one.[17] This case proves the point. The defendants' conduct is an omission if characterized as a failure to abate a private nuisance and is an affirmative act if characterized as maintaining a private nuisance. Indeed, our nuisance cases appear to move freely between characterizing a defendant's conduct as a failure to abate a nuisance (an omission) and the maintenance of a nuisance (a commission).[18]

---

*under a duty to take a positive action*) that a reasonable person would recognize as creating an unreasonable risk of (invading) (interfering) with another's use or enjoyment of property" (emphasis added).

For further discussion of the concept of duty in negligence law, see *Behrendt v. Gulf Underwriters Insurance Co.*, 2009 WI 71, ¶ 52 n.5, ___ Wis. 2d ___, 768 N.W.2d 568 (Abrahamson, C.J., concurring).

[17] For further discussion of the concepts of omission and commission in negligence law, see *Behrendt v. Gulf Underwriters Insurance Co.*, 2009 WI 71, ¶¶ 54–55, ___ Wis. 2d ___, 768 N.W.2d 568 (Abrahamson, C.J., concurring).

[18] *See, e.g., Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶¶ 32–33, 35, 40, 42, 45, 48, 61, 73, 76, 80 (referring to the maintenance of a nuisance interchangeably with the failure to abate a nuisance); *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 24 n.19, 254 Wis. 2d 77, 646 N.W.2d 777 (stating that in an action for "maintenance of a public nuisance," liability is based "on the defendant's failure to abate a public nuisance of which the defendant had actual or constructive notice"); *Brown v. Milwaukee Terminal Ry. Co.*, 199 Wis. 575, 227 N.W. 385 (1929), on reargument, 199 Wis. 588, 589, 227 N.W. 385 (1929) ("One who maintains a nuisance created by another is liable for injuries sustained because of the danger incident thereto just as clearly as if he had himself created the danger in the first place. 'If the owner or the occupier of property continues a nuisance created thereon by others, he is

¶ 62. Restatement § 824(b) uses language consistent with the commission/omission distinction, but the distinction between commission and omission is not outcome-determinative in the present case because the possessor of land has a duty relating to the maintenance of (or failure to abate) artificial conditions on the land. Restatement § 839 imposes a duty upon a possessor of land to conform his or her conduct to a standard of care by doing what is reasonable and practicable under the circumstances to abate a nuisance resulting from an artificial condition on the possessor's land.

¶ 63. In sum, the majority opinion errs in ignoring the special tort rules applicable to a case involving private nuisance, negligence, and possessors of land.

¶ 64. Second, the majority opinion erroneously concludes that a possessor of land who did not create an artificial condition on the land causing a nuisance cannot be liable for merely failing to abate the condition. The Restatement and our case law declare that a possessor may be liable even if the possessor did not create the artificial condition.[19]

---

liable, not because he owns or occupies the premises, but because he does not abate the nuisance.' " (quoting 20 Ruling Case Law at 392)).

[19] *See* Restatement (Second) § 839 cmt. d (stating that under § 839 "a vendee or lessee of land upon which a harmful physical condition exists may be liable under [§ 839] for failing to abate it after he takes possession, even though it was created by his vendor, lessor or other person and even though he had no part in its creation."); *Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d 635, ¶ 34 (stating that when "otherwise benign objects . . . [change] over time and become harmful, through no fault of the owner of the object . . . liability is predicated upon the defendant's failure to remove the harmful condition after he

¶ 65. Third, the majority opinion erroneously concludes that the defendants' liability is precluded by the "reasonable use" doctrine relating to interference with the flow of surface waters.

¶ 66. Interference with the flow of surface water is treated in the Restatement as a nuisance. Under Restatement § 833 (titled "Interference with the Flow of Surface Waters"), "[a]n invasion of one's interest in the use and enjoyment of land [*i.e.*, a private nuisance] resulting from another's interference with the flow of surface water may constitute a nuisance under the rules stated in §§ 821A-831," setting forth the Restatement's general provisions relating to nuisance. Put another way, § 833 provides that when an interference with the flow of surface waters results in a private

---

has notice of its existence" (citing *Brown,* 199 Wis. at 589–90)); *Physicians Plus Ins. Corp.,* 254 Wis. 2d 77, ¶ 24 (" 'One who maintains a nuisance created by another is liable for injuries sustained because of the danger incident thereto just as clearly as if he had himself created the danger in the first place. If the owner or the occupier of property continues a nuisance created thereon by others, he is liable, not because he owns or occupies the premises, but because he does not abate the nuisance.' " (quoting *Brown,* 199 Wis. at 590) (internal quotation marks and citation omitted)).

In *Brown,* the court determined that the complaint stated a claim for maintenance of a nuisance when the complaint alleged that the defendant permitted a tree to remain in a dangerous condition with notice and knowledge of the condition. *Brown,* 199 Wis. at 590. In *Physicians Plus,* the court similarly concluded that the defendant landowners were liable for maintaining a nuisance "based solely on [the defendants'] failure to trim the branches of their tree, which they knew, or should have known to be obstructing the view of a stop sign—their failure to abate the public nuisance." *Physicians Plus Ins. Corp.,* 254 Wis. 2d 77, ¶ 51.

nuisance, "the same general rules apply in determining liability for the invasion of the neighbor's interest in the use and enjoyment of his land as apply when an invasion results through vibrations, noise, smoke or the pollution of waters."[20]

[20] Restatement (Second) of Torts § 833 cmt. b.

Prior to *Deetz,* the general rules for determining liability did not apply when a private nuisance resulted from the interference with the flow of surface water. *Deetz* abolished the "common enemy" doctrine, under which " '[s]urface water is recognized as a common enemy, which each proprietor may fight off or control as he will or is able, either by retention, diversion, repulsion, or altered transmission; so that no cause of action arises for such interference, even if some injury occurs, causing damage.' " *State v. Deetz,* 66 Wis. 2d 1, 10, 224 N.W.2d 407 (quoting *Borchsenius v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 96 Wis. 448, 450, 71 N.W. 884 (1897)).

The Reporters' Note to Restatement (Second) of Torts § 833 states that § 833 replaces the "rigid and antagonistic" rules (including the common enemy doctrine) that previously had governed when a private nuisance resulted from interference with the flow of surface waters.

One of the defendants' briefs to this court argues that general principles of liability for a nuisance do not apply when the nuisance involves surface water. *See* Defendants-Respondents' Charles C. O'Rourke, Joan R. O'Rourke, and American Family Mutual Insurance Company's Response Brief at 12–13 (arguing that "surface water is a topic given distinct treatment in the law" and that the plaintiffs err in "seek[ing] to apply general nuisance principles in lieu of long-established standards developed by Wisconsin courts to address excess surface water problems"). In its certification memorandum, the court of appeals also asked this court to determine whether special rules apply in nuisance cases involving surface water.

Comment b to Restatement (Second) of Torts § 833 answers the defendants' argument and the question posed by the court of appeals. Under the rule codified in § 833 and adopted in

¶ 67. The Restatement adopts the reasonable use doctrine for intentional nuisances. This court adopted the reasonable use doctrine in *State v. Deetz,* 66 Wis. 2d 1, 224 N.W.2d 407 (1974).[21] *Deetz* recognized that the "reasonable use" doctrine is codified in Restatement (Second) of Torts § 833 and adopted the reasonable use doctrine as codified in § 833.[22]

¶ 68. Under the reasonable use doctrine, "each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable."[23]

---

*Deetz,* a nuisance case involving the flow of surface waters is treated like any other nuisance case. *See also* Restatement (Second) of Torts § 839 cmt. k (stating that a vendee or lessee of land may be liable under § 839 for the failure to abate a nuisance occurring when "an embankment on the land diverts water that washes away the roadbed of a railroad" or when "a gutter on a building discharges water upon the public sidewalk which freezes in cold weather and makes the walk unsafe for passage").

Although the majority opinion is not clear, it also seems to conclude that nuisance cases involving the flow of surface waters should be decided under the rules governing liability in nuisance cases generally. *See* majority op., ¶ 5 n.5.

[21] *Deetz,* 66 Wis. 2d at 18.

[22] *Deetz,* 66 Wis. 2d at 16, 18 (identifying Restatement (Second) of Torts § 833 as "a codification" of the reasonable use rule; concluding that "the reasonable use doctrine as set forth in the Restatement of Torts better comports with the realities of modern society than does the common enemy doctrine and accords with the trend of decisions for the last thirty-five years").

[23] *Deetz,* 66 Wis. 2d at 14 (quotation marks and citation omitted).

¶ 69. The "reasonable use" doctrine codified in Restatement § 833 and adopted in *Deetz* governs intentional invasions of the neighbor's interests, not negligent invasions such as in the present case. *Deetz* concerned an intentional invasion of another's interest in the use and enjoyment of land. *See Deetz,* 66 Wis. 2d at 19. Accordingly, the court in *Deetz* relied upon provisions in the Restatement (Second) falling within §§ 826–831, governing intentional nuisances. *See Deetz* 66 Wis. 2d at 19–20.

¶ 70. In other words, when a private nuisance results from an intentional interference with the flow of surface water, "liability depends upon whether the invasion is unreasonable" under Restatement of Torts (Second) §§ 826–831 (relating to the reasonableness of an intentional invasion of another's interest in the use or enjoyment of land).[24]

¶ 71. In contrast, when a private nuisance results from a negligent interference with the flow of surface water, Restatement § 833 requires the same inquiry as Restatement (Second) § 822(b), setting forth the general rule of liability for a private nuisance based on negligent conduct.[25] I applied § 822(b)'s general rule in

[24] Restatement (Second) of Torts § 833 cmt. b. *See also* § 822(a) (stating that one may be subject to liability for a private nuisance if the invasion of another's interest in the private use and enjoyment of land is "intentional and unreasonable").

[25] *See* Restatement (Second) of Torts § 833 cmt. b ("When the invasion is not intentional, the liability of the person harmfully interfering with the flow of surface waters depends upon whether his conduct has been negligent, reckless or abnormally dangerous, assuming that the other elements of liability stated in § 822 are present.").

*Compare* § 822(b) (stating that one is subject to liability for a private nuisance if "his conduct is a legal cause of an invasion

Part I of the concurrence, as well as the more specific rules (§ 824 and § 839) to which § 822(b) directs the inquiry under the circumstances of the present case. Although liability for the negligent maintenance of a nuisance depends upon whether the defendant's conduct is unreasonable, the test is not whether the defendant has interfered with the flow of surface waters through an unreasonable use of land.

¶ 72. For the reasons set forth I conclude that the majority's legal analysis of the instant case is faulty. I write separately to set forth what I conclude is the correct legal analysis.

¶ 73. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

of another's interest in the private use and enjoyment of land, and the invasion is . . . (b) unintentional and otherwise actionable under the rules controlling liability for negligent . . . conduct . . .").