Robert D. KONNEKER and Ann M. Konneker,
Plaintiffs-Respondents-Petitioners,

v.

Robert S. ROMANO and Francis A. Romano,
Defendants-Appellants,

Norman E. NELSON and Lawrence A. Nelson,
Defendants.

Supreme Court

No. 2008AP1546. *Oral argument February 11, 2010.*
*—Decided July 7, 2010.*

2010 WI 65

(Also reported in 785 N.W.2d 432.)

ABRAHAMSON, C.J., concurs.
BRADLEY, J., joins.

For the plaintiffs-respondents-petitioners there were briefs by *Steven R. Sorenson, Emily E. Dinegan, and the Sorenson Law Office,* Ripon, and oral argument by *Steven R. Sorenson.*

For the defendants-appellants there was a brief by *Jeffrey J. Liotta, Lisa M. Arent, and Whyte Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *Lisa M. Arent.*

An amicus curiae brief was filed by *Thomas D. Larson and Wisconsin REALTORS® Association,* Madison, on behalf of the Wisconsin REALTORS® Association.

An amicus curiae brief was filed by *William P. O'Connor, Mary Beth Peranteau, and Wheeler, Van Sickle & Anderson, S.C.,* Madison, on behalf of the Wisconsin Association of Lakes.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished per curiam decision of the court of appeals[1] that reversed an order of the Green Lake County Circuit Court, Judge William M. McMonigal presiding, which granted summary judgment to Robert and Ann Konneker (the Konnekers) and denied summary judgment to Robert and Francis Romano (the Romanos) and Norman and Lawrence Nelson (the Nelsons). The court of appeals remanded, directing the circuit court to enter summary judgment in favor of the Romanos.[2] The Konnekers petitioned this court for review, and we accepted. We now reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings.

¶ 2. This case presents the following issues: (1) whether this lakefront easement, created by a deed that is otherwise silent as to the easement's use and purpose, grants riparian rights, including the right to

---

[1] *Konneker v. Romano,* No. 2008AP1546, unpublished slip op. (Wis. Ct. App. Mar. 19, 2009).

[2] The Nelsons did not appeal from the circuit court's order.

construct and maintain a pier; and (2) what impact, if any, do Wis. Stat. §§ 30.131 and 30.133 (2007–08)[3] have

[3] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

Wisconsin Stat. § 30.131, "Wharves and piers placed and maintained by persons other than riparian owners," provides:

(1) Notwithstanding s. 30.133, a wharf or pier of the type which does not require a permit under ss. 30.12(1) and 30.13 that abuts riparian land and that is placed in a navigable water by a person other than the owner of the riparian land may not be considered to be an unlawful structure on the grounds that it is not placed and maintained by the owner if all of the following requirements are met:

(a) The owner of the riparian land or the owner's predecessor in interest entered into a written easement that was recorded before December 31, 1986, and that authorizes access to the shore to a person who is not an owner of the riparian land.

(b) The person to whom the easement was granted or that person's successor in interest is the person who places and maintains the wharf or pier.

(c) The placement and maintenance of the wharf or pier is not prohibited by and is not inconsistent with the terms of the written easement.

(d) The wharf or pier has been placed seasonally in the same location at least once every 4 years since the written easement described in par. (a) was recorded.

(e) The wharf or pier is substantially the same size and configuration as it was on April 28, 1990, or during its last placement before April 28, 1990, whichever is later.

(f) The placement of the wharf or pier complies with the provisions of this chapter, with any rules promulgated under this chapter and with any applicable municipal regulations or ordinances.

(2) Notwithstanding s. 30.133, an easement under sub. (1) may be conveyed if it is conveyed at the same time, and to the same person, that the land to which the easement is appurtenant is conveyed.

Wisconsin Stat. § 30.133 is a "[p]rohibition against conveyance of riparian rights":

on this case.[4]

¶ 3. We conclude that summary judgment was improper in this case. The language of the deed, which created the Konnekers' easement, is ambiguous. The deed conveys to the Konnekers a 20–foot wide lakefront easement along the west side of the Romanos' and Nelsons' property but is otherwise silent as to the easement's use and purpose. It is therefore not clear from the deed whether the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier. Because the parties' competing affidavits raised a genuine issue of material fact concerning the intent behind the easement, summary judgment was improper. We therefore reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings.

¶ 4. We further conclude that Wis. Stat. §§ 30.133 and 30.131 are inapplicable to this case. It is undisputed that the easement was originally conveyed well before the effective date of § 30.133. In addition, the issue in

(1) Beginning on April 9, 1994, and except as provided in s. 30.1355 [s. 30.1335], no owner of riparian land that abuts a navigable water may grant by an easement or by a similar conveyance any riparian right in the land to another person, except for the right to cross the land in order to have access to the navigable water. This right to cross the land may not include the right to place any structure or material, including a boat docking facility, as defined in s. 30.1335(1)(a), in the navigable water.

(2) This section does not apply to riparian land located within the boundary of any hydroelectric project licensed or exempted by the federal government, if the conveyance is authorized under any license, rule or order issued by the federal agency having jurisdiction over the project.

[4] The issue of whether Wis. Stat. §§ 30.131 and 30.133 are applicable to this case was not invoked, argued, or appealed below. However, pursuant to our order, the parties briefed the issue before this court.

275

this case is whether the easement grants riparian rights, including the right to construct and maintain a pier, not whether a pier—if and once constructed by the easement holder—constitutes a lawful structure under § 30.131.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 5. On October 29, 2004, the Konnekers obtained via deed property on Orchard Avenue in Green Lake County, Wisconsin, more particularly described as follows: "Lot One (1) of Certified Survey Map 2643 recorded in Volume 13 of Certified Survey Maps on Page 2643 and 2643B, being a division of Lot Two (2) of Certified Survey Map No. 770, being a part of the SE ¼ of the SW ¼ of Section 34, T16N, R12E." The conveyance included an easement across riparian[5] property identified as Lot 3:

*TOGETHER WITH an easement 20 feet in width along the Westerly side of Lot Three (3) of Certified Survey Map No. 289* as recorded in the office of the Register of Deeds for Green Lake County, Wisconsin on September

---

[5] "Riparian" means "[o]f, relating to, or located on the bank of a river or stream (or occasionally another body of water, such as a lake)." *Black's Law Dictionary* 1328 (7th ed. 1999); *see also Stoesser v. Shore Drive P'ship*, 172 Wis. 2d 660, 665, 494 N.W.2d 204 (1993). In the legal sense, a landowner whose property borders on a body of water has "riparian rights," meaning "the right to make reasonable use of the water." *Black's* 1328. Though subject to regulation, riparian rights "include the right to use the shoreline and have access to the waters, the right to reasonable use of the waters for domestic, agricultural and recreational purposes, and the right to construct a pier or similar structure in aid of navigation." *ABKA Ltd. P'ship v. DNR*, 2002 WI 106, ¶ 57, 255 Wis. 2d 486, 648 N.W.2d 854.

1, 1965 in Volume 1 of Certified Survey Maps at page 289 being a part of the S ½ of the SW ¼ of Section 34, T16N, R12E, *extending from Orchard Avenue to Beyer's Cove.* All of the above lying and being in the Township of Princeton, County of Green Lake, State of Wisconsin.

(Emphasis added.) Lot 3, co-owned by the Romanos and the Nelsons, is lakefront property that borders a portion of Green Lake known as Beyer's Cove. Lot 3 is located across the street from the Konnekers' property, on the opposite side of Orchard Avenue. Accordingly, the Konnekers, unlike the Romanos and the Nelsons, are non-riparian landowners. The Konnekers' easement is "20 feet in width" and "extend[s] from Orchard Avenue to Beyer's Cove" along the west side of the Romanos' and Nelsons' property. The easement is the subject of this dispute.

¶ 6. The easement was first created and conveyed in 1983 by Barbara D. Ciszek, Edward Ciszek, Peter J. Ciszek, and Angeline L. Ciszek (the Ciszeks).[6] That conveyance and each subsequent conveyance[7] contained the same substantive language, describing the

[6] On November 23, 1983, the Ciszeks conveyed Lot 2 of Certified Survey Map No. 770, together with the easement along Lot 3, to Robert Thomas Blizek and Marguerite Blizek.

[7] On February 11, 1989, the Blizeks conveyed Lot 2 of Certified Survey Map No. 770, together with the easement along Lot 3, to Grant G. Gardner and Patricia A. Gardner. On May 25, 1994, the Gardners conveyed Lot 2 of Certified Survey Map No. 770, together with the easement along Lot 3, to Rose D. Carlsson, as Trustee under self declared Trust. On October 11, 1999, the Carlsson Trust had Lot 2 resurveyed into two lots, creating Lot 1 of Certified Survey Map No. 2643. Finally, as previously mentioned, on October 29, 2004, the Carlsson Trust conveyed Lot 1 of Certified Survey Map No. 2643, together with the easement along Lot 3, to the Konnekers.

easement as 20 feet in width along the westerly side of Lot 3 of Certified Survey Map No. 289, extending from Orchard Avenue to Beyer's Cove.

¶ 7. The Ciszeks were also predecessors in interest to Lot 3. According to an affidavit signed by Edward Ciszek and Barbara D. Ciszek on August 13, 1984, and maintained in the Register of Deeds Office for Green Lake County, as of that date, seven different parcels of land were entitled to use Lot 3 "as an access to Beyer[']s Cove, being a part of Green Lake." The affidavit further states that "it was the intention of all parties in granting the above-described access easements, that said easements should be appurtenant to and run with the ownership of the respective lots which they service."

¶ 8. On November 5, 1985, the Ciszeks conveyed Lot 3 to Richard A. Fagar and Catherine M. Fagar and the Nelsons, as tenants in common. On May 1, 1987, the Fagars conveyed their one-half interest in Lot 3 to the Romanos. Accordingly, the Romanos and the Nelsons are the current co-owners of Lot 3.

¶ 9. According to the Nelsons' affidavit, sometime prior to May 1, 1990, the Nelsons "constructed a pier on or close to the 20 foot easement for mooring their boat." Beginning in May 1990, the Romanos and the Nelsons leased to Grant Gardner, a predecessor in interest to the Konnekers' property, *see supra* note 7, "a portion of Lot #3 . . . for the purpose of berthing [his] boat thereon." For annual rent of $150, Gardner was permitted "to place a boat lift and a limited number of pier sections to moor" a particularly described boat through the end of the 1994 boating season. The lease advised Gardner that he "may not sublet or assign [his] space to others" and that "seven other property owners have access rights on and to the subject premises" with which

he may not interfere. On January 24, 1994, Robert Romano sent a letter to Lake Realty "concerning the sale of Grant Gardner's home" and reiterated that the pier rights under the lease were "not transferable and were only extended to Grant Gardner and his [] boat."

¶ 10. Thereafter, the Romanos and the Nelsons entered into a similar lease with Arne Carlsson, the Gardners' successor in interest, *see supra* note 7. For annual rent of $200, Carlsson was "allowed to place a boat lift and a limited number of pier sections to moor" a particularly described boat along Lot 3. The original term of the lease was May 1, 1994, to October 1, 1994, but the parties initialed a lease extension from May 1, 1995, to October 1, 1995. In an undated letter, Robert Romano informed Hagstrom/Schneider Real Estate that "[their] agreement with the Carlssons [was] not transferable."

¶ 11. As stated by Robert Konneker in his affidavit, when the Carlsson Trust conveyed Lot 1 to the Konnekers, the Konnekers understood that they would also have access to the piers on the Romanos' and the Nelsons' property.

¶ 12. At some point, the Konnekers installed their own pier along Lot 3. The Romanos and the Nelsons objected to the pier in a letter to Robert Konneker, dated October 10, 2006:

> On October 7, 2006 we learned that you placed a boat pier in the water on Lot 3 of [Certified Survey Map] 289 in Green Lake, Wisconsin. As you are well aware, you are neither an owner nor a lessee of this property and we consider your actions in placing the pier to be unlawful and to constitute trespassing.
>
> Your assertion that your property's easement somehow conveys riparian rights and entitles you to unilaterally place a pier is both incorrect and contrary to Wisconsin law. It was made clear to you prior to your purchase of

> your property and numerous times thereafter, that you do not have the right to place a pier in Lot 3.
>
> If you do not remove the pier immediately we will arrange to have it removed . . . .

The Romanos and the Nelsons subsequently removed the Konnekers' pier.

¶ 13. On March 1, 2007, the Konnekers filed this action, seeking a declaratory judgment that the easement granted to them riparian rights, including the right to erect and maintain a pier on the easement. In their answer, the Romanos alleged that the complaint failed to state a legally cognizable claim and should be dismissed. The Romanos counterclaimed for trespass and sought an order prohibiting the Konnekers from erecting any future structures on the easement. In their answer, the Nelsons likewise sought a declaration that the Konnekers do not have riparian rights under the easement and are not entitled to erect any structures on the easement.

¶ 14. The parties filed cross motions for summary judgment. The Romanos argued that the Konnekers were not granted riparian rights under the easement, which provides only "for a 200–foot [sic] easement from Orchard Avenue to Beyer[']s Cove," indicating "that the easement is to simply provide ingress and egress to the lake." The Romanos further asserted that no pier was installed at the time the easement was originally conveyed, and in fact, when a pier was erected on Lot 3, a lease was created specifically for the pier's use.

¶ 15. In support of their motion for summary judgment, the Nelsons also argued that the easement did not grant to the Konnekers the right to construct a pier thereon and that the granting of such a right was never the parties' intent:

280

[T]he fact that the [Konnekers'] predecessors in title (the Gardners and the Carlssons) entered into separate, private lease agreements to use the [Romanos' and the Nelsons'] pier and actually paid rent on an annual basis, illustrate that there was no intent between the parties that a pier could be constructed on the 20 foot easement.

In their brief, the Nelsons made a point that their pier "is placed well to the east of the 20 foot easement." However, the Nelsons' affidavit asserted that said pier was constructed "on or close to the 20 foot easement."

¶ 16. The Konnekers, on the other hand, moved for summary judgment on the grounds that they have a right to install their own pier on the easement, consistent with the intent of the original parties who granted the easement. In particular, "Beyer's Cove is historically an area of the lake wherein individuals enter the lake by boat." In his affidavit, Robert Konneker maintained the following:

Beyer[']s Cove is an access area into Green Lake and consists of large amounts of vegetation. The water at Beyer[']s Cove is not conducive to swimming and there is no beach area for sun bathing. The only use for the access area at the end of the easement at Beyer[']s Cove is to enter Green Lake by boat.

His affidavit further asserted that the Konnekers' predecessors in interest accessed the lake by using the Romanos' and the Nelsons' piers and that when the Konnekers purchased their lot, the Konnekers "understood that [they] would have access to the piers on the [Romanos' and the Nelsons'] property in order to enter Beyer[']s Cove; just as the owners before [them] had the use of the piers to access the lake." Once informed that

281

they were not permitted to use the Romanos' and the Nelsons' piers, the Konnekers erected their own pier on the easement.

¶ 17. On May 5, 2008, the circuit court granted the Konnekers' motion for summary judgment and denied the Romanos' and the Nelsons' motions for summary judgment. The court declared that the easement "is a lake access easement which allows the [Konnekers] access to the lake including the right to construct a pier upon that easement." The court clarified that it is "not making any finding that a pier could or could not be installed, but that the intent of the parties was to grant the easement holder a lake access easement and to allow for the construction of a pier."

¶ 18. In its oral ruling, the circuit court acknowledged that it was making a determination on competing motions for summary judgment, in which case he "would theoretically be setting the matter up for trial." Nevertheless, the court was satisfied that despite the specific language in the easement, the intent of the original parties in granting the easement "was to permit a back lot owner to have lake access, and lake access inherently would allow for the construction of a pier." In arriving at his conclusion, the circuit court questioned Attorney Lehner, counsel for the Nelsons, regarding his knowledge of Green Lake:

> The Court: Mr. Lehner, I know that your family has had a home or a cottage on Green Lake for several generations. How would you describe Beyer's Cove as it relates to Green Lake?
>
> Attorney Lehner: Originally, Your Honor—we have a second home on Orchard Avenue, which is—that road runs right by, of course, where we're talking here. We're further to the east on the main part of the lake between

Beyer's Cove and Sugar Loaf. When I was growing up, Beyer's Cove was a marshy area . . . [but] certainly is navigable now . . . .

The Court: Would you believe that people who buy homes in the Beyer's Cove area, either on the cove or with access to Beyer's Cove, do so for the opportunity to kayak or canoe on or for the opportunity to have access to Green Lake?

Attorney Lehner: I would say both. . . .

In addition, the circuit court took judicial notice of the apparent fact that many off-shore properties are sold with confirmation that the properties enjoy the benefit of lake access.

¶ 19. The Romanos moved for reconsideration, which the circuit court denied in an oral ruling on June 13, 2008. The Romanos appealed.

¶ 20. On March 19, 2009, the court of appeals issued a per curiam decision reversing the order of the circuit court and remanding with directions that summary judgment be entered in favor of the Romanos. *Konneker v. Romano,* No. 2008AP1546, unpublished slip op., ¶ 1 (Wis. Ct. App. Mar. 19, 2009). The court of appeals concluded that the easement language was ambiguous, given its silence as to purpose and scope. *Id.,* ¶ 9. Accordingly, the court looked to the parties' intent when creating the easement to determine the parties' rights, finding no evidence to support the Konnekers' contention that the easement included a conveyance of riparian rights permitting them to erect a pier. *Id.,* ¶ 11. In particular, the court noted the fact that there was no pier in place when the easement was created, *id.,* ¶ 9, and that the contemporaneous grant of several easements to the same 20–foot parcel made it "inherently improbable" that the original grantors con-

templated that all of the easement holders would have the right to erect their own piers, *id.,* ¶ 11. Finally, the court rejected the Konnekers' assertion that the only use for the access area at Beyer's Cove is to enter the lake by boat, *id.,* ¶ 9, concluding that "other than the personal knowledge of the court and counsel, there [did] not appear to be any verifiable evidence that the historical use of the cove was primarily for access to Green Lake by boat," *id.,* ¶ 10.

¶ 21. The Konnekers petitioned this court for review, which we granted on October 20, 2009. We now reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings.

## II. STANDARD OF REVIEW

■■■

¶ 22. " 'Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo.' " *Hocking v. City of Dodgeville,* 2009 WI 70, ¶ 7, 318 Wis. 2d 681, 768 N.W.2d 552 (quoting *Schmidt v. N. States Power Co.,* 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294). We apply the same methodology used by the circuit court, which is set forth in Wis. Stat. § 802.08. *Noffke v. Bakke,* 2009 WI 10, ¶ 9, 315 Wis. 2d 350, 760 N.W.2d 156; *Novell v. Migliaccio,* 2008 WI 44, ¶ 23, 309 Wis. 2d 132, 749 N.W.2d 544. "Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Schmidt,* 305 Wis. 2d 538, ¶ 24; *see also* § 802.08(2). The circuit court should not grant summary judgment "unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy." *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980).

¶ 23. In this case, we are called upon to interpret a deed creating an easement and address the application of Wis. Stat. §§ 30.131 and 30.133. The threshold inquiry of whether a deed is ambiguous presents a question of law that this court reviews independently. *AKG Real Estate, LLC v. Kosterman,* 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835. The construction of an unambiguous deed is likewise a question of law. *Id.* However, if the language of the deed is ambiguous, then the intent behind the language presents a question of fact. *Rikkers v. Ryan,* 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977).

¶ 24. Finally, statutory interpretation and application is a question of law that we review de novo while still benefiting from the lower courts' analyses. *Heritage Farms, Inc. v. Markel Ins. Co.,* 2009 WI 27, ¶ 5, 316 Wis. 2d 47, 762 N.W.2d 652.

## III. ANALYSIS

### A. Whether the Konnekers' Easement Grants Riparian Rights, Including the Right to Construct and Maintain a Pier

¶ 25. "An easement 'is a permanent interest in another's land, with a right to enjoy it fully and without obstruction.' "[8] *Hunter v. McDonald,* 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977) (quoting *Schwartz v. Evan-*

---

[8] Title does not pass to an easement holder, "but only a right of use or privilege in the land of another." *Polebitzke v. John Week Lumber Co.,* 157 Wis. 377, 381, 147 N.W. 703 (1914); *see also Hunter v. McDonald,* 78 Wis. 2d 338, 344, 254 N.W.2d 282

*gelical Deaconess Soc'y of Wis.*, 46 Wis. 2d 432, 438, 175 N.W.2d 225 (1970)). The "dominant estate" enjoys the privileges granted by the easement, and the "servient estate" permits the exercise of those privileges. *Atkinson v. Mentzel,* 211 Wis. 2d 628, 637, 566 N.W.2d 158 (Ct. App. 1997). While the servient estate may not unreasonably interfere with the dominant estate's right to use the easement, "[t]he use of the easement must be in accordance with and confined to the terms and purposes of the grant." *Stoesser v. Shore Drive P'ship,* 172 Wis. 2d 660, 668, 494 N.W.2d 204 (1993); *Hunter,* 78 Wis. 2d at 343.

¶ 26. "Because the easement in question is created by deed, the court must look to that instrument in construing the relative rights of the landowners." *Hunter,* 78 Wis. 2d at 342–43. "Deeds are construed as are other instruments"; accordingly, "the purpose of the court is to ascertain the intention of the parties." *Rikkers,* 76 Wis. 2d at 188; *see also Gilbert v. Geiger,* 2008 WI App 29, ¶ 10, 307 Wis. 2d 463, 747 N.W.2d 188. The primary source of the parties' intent is what is written within the four corners of the deed. *Rikkers,* 76 Wis. 2d at 188. If the language is unambiguous, it would be improper to resort to extrinsic evidence to ascertain the parties' intent. *Id.* However, if the language of the deed is ambiguous, meaning it is susceptible to more than one

(1977) ("The [easement holder's] interest is not an estate in land, but rather a right to use the land of another for a special purpose not inconsistent with the general property in the owner."). "Thus, this court has stated, 'A conveyance of a right-of-way two rods wide is a conveyance of a right-of-way over a strip of land two rods wide, not a conveyance of the strip of land itself. Title to the land does not pass but only the right to pass over it.' " *Hunter,* 78 Wis. 2d at 344 (quoting *Kleih v. Van Schoyck,* 250 Wis. 413, 418, 27 N.W.2d 490 (1947)).

reasonable interpretation, then the parties may introduce other evidence to demonstrate the intent behind the language. *Id.*; *see also Grosshans v. Rueping*, 36 Wis. 2d 519, 528, 153 N.W.2d 619 (1967) ("[I]t is only when a deed is ambiguous that the intent of the parties can be manifested by extrinsic evidence.").

¶ 27. In this case, the issue is whether the Konnekers' lakefront easement grants riparian rights, including the right to construct and maintain a pier.[9] Riparian rights, one of which is the right to construct a pier to access navigable waters, are generally reserved for riparian landowners. *See Stoesser*, 172 Wis. 2d at 666. However, up until April 9, 1994,[10] Wisconsin

---

[9] The concurrence posits that "the focus on remand should not be on whether the easement grants riparian rights, but on determining what rights or interests the easement was intended to grant." Concurrence, ¶ 45. However, our framing of the issue is consistent with the relief that the Konnekers seek in their complaint. They seek a judgment "[d]eclaring that the plaintiffs have an easement, which include[s] riparian rights" and that "with those easement rights, the plaintiffs have the right to erect and maintain a pier on said easement." Likewise, in their answer, the Nelsons requested a judgment "[d]eclaring that the Plaintiffs do not have riparian rights under said easement" and that "the Plaintiffs do not have the right to erect and maintain a pier, boat lift or other structure upon said easement." In addition, in their motions for summary judgment, both the Romanos and the Nelsons framed the issue in terms of whether the Konnekers' easement grants riparian rights. Thus, consistent with the parties' requests for relief, we determine that the proper focus in this case is whether the Konnekers' lakefront easement grants riparian rights, including the right to construct and maintain a pier.

[10] Effective April 9, 1994, the legislature prohibited riparian landowners from conveying "any riparian right in the land

recognized the ability of a riparian landowner to convey riparian rights by easement. *Id.* at 668.[11]

¶ 28. For example, in *Wendt v. Blazek,* 2001 WI App 91, 242 Wis. 2d 722, 626 N.W.2d 78, the court of appeals affirmed a summary judgment declaring that an easement, conveyed to the Blazeks and other non-riparian landowners, included the right to use and

---

to another person, except for the right to cross the land in order to have access to the navigable water." Wis. Stat. § 30.133(1). For a detailed discussion of § 30.133 and its application to this case, see *infra* Part III.B.1.

[11] The circuit court relied principally on this court's decision in *Stoesser* to arrive at its conclusion that in this case, the parties' intent in creating the easement "was to permit a back lot owner to have lake access, and lake access inherently would allow for the construction of a pier." However, the holding in *Stoesser* that "[r]iparian rights can be conveyed by easement to non-riparian owners" was premised on our recognition that a deed, which in that case expressly granted the easement holders the right "to use the lake shore for bathing, boating or kindred purposes," should not be rewritten by the court. *See* 172 Wis. 2d at 670. We explained:

> Since one cannot bathe or boat on the shore this language was obviously intended to allow the [easement holders] access to Lake Beulah from the [servient estate's] lakeshore. The [easement holders] seek to use their easement for the purposes expressly stated in the deed and must be allowed that right.

*Id.* at 668. A conclusion otherwise "would destroy the certainty upon which contracting parties are entitled to rely." *Id.* at 670.

Accordingly, our holding in *Stoesser* should not be relied upon to support the proposition that a lakefront easement, created by a deed that is otherwise silent as to the easement's use and purpose, necessarily permits lake access, let alone "inherently . . . allow[s] for the construction of a pier." A lakefront easement, like any easement, must be used only in accordance with and confined to the terms and purposes of the grant. *See id.* at 668; *Hunter,* 78 Wis. 2d at 343.

maintain a pier. In that case, the Jaeckle family owned a resort on Okauchee Lake along with other non-riparian lots that adjoined the resort property. *Id.*, ¶ 2. The Jaeckles constructed and maintained a private pier on the resort property. *Id.*, ¶ 3. When they sold the resort property, the deed "reserved to the Jaeckles and their heirs and assigns 'an easement for the purpose of access to Okauchee Lake on and over a strip of land 15 feet in width [along the resort property].' " *Id.*, ¶ 2. The aforementioned pier was located at the point where the easement met the edge of the lake. *Id.*, ¶ 3. The Jaeckles eventually sold their non-riparian lots, one of which was sold to the Blazeks, and the conveyances included the easement. *Id.*, ¶ 2.

¶ 29. Thereafter, the Wendts acquired the servient estate (the former resort property). *Id.*, ¶ 4. The Wendts then sought a judgment declaring that the easement did not include a right to use and maintain the pier. *Id.* The court of appeals affirmed the circuit court's order granting summary judgment to the Blazeks and the other non-riparian landowners, concluding that the easement was intended to confer to the Jaeckles and their assigns the right to use and maintain the pier. *Id.*, ¶ 18. According to the court of appeals, the critical evidence was an affidavit by a Jaeckle family member representing that the Jaeckles constructed the pier long before the easement was created, and when they sold the resort property, they reserved the easement in order to still use the pier and lakeshore. *Id.*, ¶ 15. Because that affidavit was unrefuted, *id.*, the court concluded that no material issue of fact existed, and the Blazeks and the other non-riparian landowners were entitled to judgment as a matter of law, *id.*, ¶ 18.

¶ 30. Turning to the case at issue, we conclude that the language of the October 29, 2004, deed, which created the Konnekers' easement, is ambiguous. The relevant portion of the deed conveyed to the Konnekers Lot 1 "TOGETHER WITH an easement 20 feet in width along the Westerly side of Lot Three (3) of Certified Survey Map No. 289 . . . extending from Orchard Avenue to Beyer's Cove." Clearly, the deed conveys to the Konnekers a 20–foot wide lakefront easement along the west side of the Romanos' and Nelsons' property. However, the deed is otherwise silent as to the easement's use and purpose. In particular, it is not clear from the deed whether the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier. Accordingly, the deed is ambiguous, and the court must resort to extrinsic evidence to ascertain the parties' intent.

¶ 31. In support of their cross motions for summary judgment, the parties presented competing affidavits demonstrating the intent behind the easement. Because the evidence as represented in the affidavits raised genuine issues of material fact, summary judgment was improper.

¶ 32. In support of their position that when the easement was created, the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier, the Konnekers submitted an affidavit representing that the only use for the easement's access area is to enter the lake by boat because Beyer's Cove consists of large amounts of vegetation, is not conducive to swimming, and lacks

beach area for sun bathing.[12] That evidence, however, was refuted by the Nelsons' affidavit. The Nelsons asserted that when the easement was originally conveyed in 1983, no pier, boat lift, or boat was located on the easement, and therefore, it was not the parties' intent to permit the easement holder to construct or maintain a pier thereon. According to the Romanos, the fact that a pier did not exist on the easement at the time the easement was created raised a significant distinction between the facts of this case and those in *Wendt*. *See* 242 Wis. 2d 722, ¶ 15. In addition, in support of their motion for reconsideration, the Romanos introduced evidence that as of August 1984, seven parcels of land were entitled to use Lot 3 for access to Beyer's Cove, and accordingly, the parties could not have possibly intended for each of those easement holders to have the right to construct a pier on the easement.

¶ 33. At the same time, the evidence put forth by the Nelsons and Romanos contradicted itself. Their

---

[12] At the motion hearing, the circuit court questioned Attorney Lehner, counsel for the Nelsons, regarding his personal knowledge of Green Lake, specifically relating to whether Beyer's Cove is used for boat access. *See supra* Part I, ¶ 18. Attorney Lehner's testimony, however, does not constitute evidence and therefore should not have been relied upon in support of the circuit court's order. Pursuant to Wisconsin Supreme Court Rule 20:3.7, a lawyer is generally not permitted to serve dual roles as advocate and witness. Comment (2) explains:

> The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

assertion that it was never the parties' intent to have a pier constructed on the easement conflicted with the Nelsons' affidavit, which provided generally that "sometime prior to May 1, 1990, [the Nelsons] constructed a pier *on or close to* the 20 foot easement for mooring their boat." (Emphasis added.) While the Nelsons maintained that "said pier was not to be used in common with any of the easement holders," the pier leases to Grant Gardner and Arne Carlsson raised an inference otherwise. Each lease provided the same language: "Lessees are advised and understand that seven other property owners have access rights on and to the subject premises and agree not to interfere with those rights." That provision can be construed as consistent with the Konnekers' position; that is, the parties intended for all the easement holders to have use of a pier for access to Green Lake. Because these competing affidavits raised a genuine issue of material fact concerning whether the parties intended the easement holders to have riparian rights, including the right to construct and maintain a pier, summary judgment was improper.

### B. Impact of Wis. Stat. §§ 30.131 and 30.133

¶ 34. The issue of whether Wis. Stat. §§ 30.131 and 30.133 are applicable to this case was not invoked, argued, or appealed below. However, we asked the parties to brief the issue before this court.

■■■■

¶ 35. Pursuant to the public trust doctrine, the state holds the beds of navigable waters in trust for all its citizens. *Hilton v. DNR,* 2006 WI 84, ¶ 18, 293 Wis. 2d 1, 717 N.W.2d 166. The legislature has the primary authority to administer and effectuate the purposes of the public trust, *id.,* ¶ 19, and does so through the regula-

tions of Wis. Stat. ch. 30. *See ABKA Ltd. P'ship v. DNR,* 2002 WI 106, ¶ 11, 255 Wis. 2d 486, 648 N.W.2d 854. The legislature has delegated to the Department of Natural Resources (DNR) broad authority to administer ch. 30. *Hilton,* 293 Wis. 2d 1, ¶ 20; *ABKA,* 255 Wis. 2d 486, ¶ 12.

### 1. Wisconsin Stat. § 30.133

¶ 36. In *Stoesser v. Shore Drive Partnership,* this court held that riparian rights can be conveyed by easement to non-riparian landowners. 172 Wis. 2d at 670. The legislature responded to *Stoesser* by enacting Wis. Stat. § 30.133. *ABKA,* 255 Wis. 2d 486, ¶ 60. Beginning April 9, 1994, "no owner of riparian land that abuts a navigable water may grant by an easement or by a similar conveyance any riparian right in the land to another person, except for the right to cross the land in order to have access to the navigable water." § 30.133(1)(a). Further, the "right to cross the land may not include the right to place any structure" in the navigable water. *Id.*

¶ 37. In this case, it is undisputed that the easement was originally conveyed in 1983, well before the April 9, 1994, effective date of Wis. Stat. § 30.133. Therefore, § 30.133 is inapplicable.

### 2. Wisconsin Stat. § 30.131

¶ 38. Pursuant to Wis. Stat. § 30.131, a pier placed in navigable water by a non-riparian landowner is considered a lawful structure if six statutory conditions are met. *Ellingsworth v. Swiggum,* 195 Wis. 2d 142, 148, 536 N.W.2d 112 (Ct. App. 1995). Those six conditions include:

> (a) The owner of the riparian land or the owner's predecessor in interest entered into a written easement

that was recorded before December 31, 1986, and that authorizes access to the shore to a person who is not an owner of the riparian land.

(b) The person to whom the easement was granted or that person's successor in interest is the person who places and maintains the wharf or pier.

(c) The placement and maintenance of the wharf or pier is not prohibited by and is not inconsistent with the terms of the written easement.

(d) The wharf or pier has been placed seasonally in the same location at least once every 4 years since the written easement described in par. (a) was recorded.

(e) The wharf or pier is substantially the same size and configuration as it was on April 28, 1990, or during its last placement before April 28, 1990, whichever is later.

(f) The placement of the wharf or pier complies with the provisions of this chapter, with any rules promulgated under this chapter and with any applicable municipal regulations or ordinances.

§ 30.131(1).

¶ 39. Here, the Romanos argue that even if the easement is construed as granting the Konnekers the riparian right to construct and maintain a pier, the easement is unenforceable as contrary to Wis. Stat. § 30.131. In particular, they assert that the easement does not meet the requirement of subsection (1)(d) because a pier was neither built at the creation of the easement in 1983 nor erected seasonally every four years thereafter.

¶ 40. As the court of appeals explained in *Wendt,* the Romanos' argument is "off the mark." *See* 242 Wis. 2d 722, ¶ 14. The issue in this case is whether the

easement grants riparian rights, including the right to construct and maintain a pier, not whether a pier—if and once constructed by the Konnekers—constitutes a lawful structure under Wis. Stat. § 30.131. *See Wendt,* 242 Wis. 2d 722, ¶ 14.

## IV. CONCLUSION

¶ 41. We conclude that summary judgment was improper in this case. The language of the deed, which created the Konnekers' easement, is ambiguous. The deed conveys to the Konnekers a 20–foot wide lakefront easement along the west side of the Romanos' and Nelsons' property but is otherwise silent as to the easement's use and purpose. It is therefore not clear from the deed whether the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier. Because the parties' competing affidavits raised a genuine issue of material fact concerning the intent behind the easement, summary judgment was improper. We therefore reverse the decision of the court of appeals and remand the case to the circuit court for further proceedings.

¶ 42. We further conclude that Wis. Stat. §§ 30.133 and 30.131 are inapplicable to this case. It is undisputed that the easement was originally conveyed well before the effective date of § 30.133. In addition, the issue in this case is whether the easement grants riparian rights, including the right to construct and maintain a pier, not whether a pier—if and once constructed by the easement holder—constitutes a lawful structure under § 30.131.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 43. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion that the case should be remanded to the circuit court. The language in the deed creating the easement is silent about the purpose and scope of the easement, leaving a factual dispute that warrants further proceedings.

¶ 44. The majority remands the matter to the circuit court because "it is not clear from the deed whether the parties intended the easement holder to have riparian rights, including the right to construct and maintain a pier." Majority op., ¶ 41.

¶ 45. In my view, the focus on remand should be not on whether the easement grants riparian rights, but on determining what rights or interests the easement was intended to grant. An easement expressly granted by deed conveys only those rights or interests that the parties intended to convey.[1] I would therefore remand the matter for the circuit court to ascertain what rights or interests the easement was intended to convey and specifically whether the right to install and maintain a pier was intended. The majority opinion at ¶ 2 and passim focuses on the bundle of riparian rights rather than on the intent of the parties. The majority opinion (¶ 2) states: "This case presents the following issues: (1) whether this lakefront easement, created by a deed that is otherwise silent as to the easement's use and purpose, grants riparian rights, including the right to construct and maintain a pier . . . ."

¶ 46. The circuit court declared that the easement "is a lake access easement which allows [the Konnekers] access to the lake including the right to construct a pier upon that easement." The Konnekers' brief here asks

---

[1] *See Hunter v. McDonald,* 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977).

this court to "reinstate the trial court's Order and Judgment granting summary judgment . . . ."

¶ 47. An easement conveyed to a non-riparian owner [the Konnekers] does not confer riparian ownership to the non-riparian landowner.[2] The easement may convey one, several, or all riparian rights to a non-riparian landowner.[3]

¶ 48. "Riparian rights" are generally defined by common law. The phrase "riparian rights" is expansive, referring to a vast array of water-related rights. Riparian rights include the right to reasonable use of the waters for domestic, agricultural and recreational purposes; the right to use the shoreline and have access to the waters; the right to any lands formed by accretion or reliction; the right to have water flow to the land without artificial obstruction; the limited right to intrude upon the lakebed to construct devices for protection from erosion; and the right, "now conditioned by statute," to construct a pier or similar structures in aid of navigation.[4]

¶ 49. The only mention the Konnekers make of any potential riparian rights other than egress and ingress and the right to install a pier is in arguing that Beyer's Cove is not conducive to various water uses other than boating.[5]

---

[2] *Stoesser v. Shore Drive P'ship*, 172 Wis. 2d 660, 669–70, 494 N.W.2d 204 (1993).

[3] *Stoesser*, 172 Wis. 2d at 668–70. *See* Wis. Stat. § 30.133 (overruling *Stoesser* and prohibiting the conveyance of riparian rights effective Apr. 9, 1994, as discussed in *ABKA Ltd. P'ship v. DNR*, 2002 WI 106, ¶¶ 57–61, 255 Wis. 2d 486, 648 N.W.2d 854).

[4] *Stoesser*, 172 Wis. 2d at 666 n.2, citing *Cassidy v. DNR*, 132 Wis. 2d 153, 159, 390 N.W.2d 81 (Ct. App. 1986). *See also ABKA Ltd. P'ship v. DNR*, 2002 WI 106, ¶ 57, 255 Wis. 2d 486, 648 N.W.2d 854.

[5] In his affidavit in support of his motion for summary

¶ 50. Although the Konnekers' filings refer to "riparian rights" generally, including the right to install a pier,[6] their affidavits on the summary judgment motion, their position before the circuit court and their arguments on appeal all center solely on access to the lake and the right to install and maintain a pier. Before the circuit court, the Konnekers' attorney stated that "the question I think for the Court is . . . whether or not as a matter of law it can be determined that that easement contained the riparian right to install and maintain a pier." For a narrative supporting my summary of the record, see majority op., ¶¶ 11–18.

¶ 51. Considering the expansive nature of "riparian rights" and the focused arguments of the Konnekers, I conclude that the proper inquiry for the circuit

judgment, Robert Konneker stated: "That Beyer[']s Cove is an access area into Green Lake and consists of large amounts of vegetation. The water at Beyer[']s Cove is not conducive to swimming and there is no beach area for sunbathing. The only use for the access area at the end of the easement at Beyer[']s Cove is to enter Green Lake by boat." The implication appears to be that the Konnekers are not seeking rights other than access to the water and the right to install and maintain a pier.

[6] The Konnekers' Complaint asks for judgment "declaring that [they] have an easement, which include [sic] riparian rights" and "[t]hat with those easement rights, [they] have the right to erect and maintain a pier on said easement."

The Konnekers' motion for summary judgment sought judgment "declaring [their] rights as easement holders to have unobstructed access to Beyer's Cove on Green Lake including the right to install and maintain a pier"

The Konnekers' brief in support of their motion for summary judgment argued for judgment "declaring their interest and rights as lake access easement holders; specifically their right to install, use and maintain a pier" at the end of the easement.

court is to determine what specific rights or interests are included in the terms and purpose of the easement, rather than to state the inquiry broadly as a question of whether the easement conveyed other unspecified riparian rights.

¶ 52. This case is very similar to *Wendt v. Blazek,* 2001 WI App 91, ¶ 14, 242 Wis. 2d 722, 626 N.W.2d 78, in which the court had to interpret an expressly conveyed lake access easement and review a summary judgment record to determine whether the easement was intended to confer the right to use and maintain a pier. There the court of appeals focused its determination simply on whether "the easement was intended to confer the right to use and maintain the pier." 242 Wis. 2d at 732, ¶ 18.

¶ 53. As presented to this court, the instant case is very similar and I would similarly focus the determination to be made on remand. The majority determines that the parties' competing affidavits have raised a genuine issue of material fact. I agree, but the issue raised centers on the right to install and maintain a pier, not on riparian rights more generally.

¶ 54. For the reasons set forth, I write separately.

¶ 55. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.