COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1930**

Cir. Ct. No. **2021CV89**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

SARAH B. HAPPE REVOCABLE TRUST AND SARAH B. HAPPE,

   PLAINTIFFS-RESPONDENTS,

 V.

JAMES J. KACZOR AND RHONDA L. KACZOR,

   DEFENDANTS-THIRD-PARTY PLAINTIFFS-APPELLANTS,

 V.

LAND UNLIMITED (A PARTNERSHIP),

   THIRD-PARTY DEFENDANT.

---

APPEAL from a judgment of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   James and Rhonda Kaczor appeal from a summary judgment order that interpreted, in a manner adverse to their interests, a term of their easement over property in which a majority interest is owned by Sarah Happe (Happe) and the Sarah B. Happe Revocable Trust (the Trust).  The Kaczors contend that the circuit court erred by finding the disputed term to be unambiguous and thus refusing to consider extrinsic evidence about its meaning.  In the alternative, they argue that the court should have addressed their claim for a prescriptive easement.

¶2    We agree that the disputed language in the easement is ambiguous and therefore reverse the summary judgment order.  We also remand the matter to the circuit court with directions that the court take and consider evidence about:  (a) the relevant parties' intent in creating the easement, and (b) potentially, as discussed in this opinion, the alternative claim for a prescriptive easement.

## BACKGROUND

¶3    This appeal involves several parcels of property in a subdivision near Connor's Lake in Sawyer County.  Outlot 2 is a wooded parcel lying on the eastern shore of the lake.  Lots 15, 16 and 17 are all landlocked parcels adjoining Outlot 2 on its eastern boundary and their western boundaries.  Lot 15 is the northernmost of the three landlocked parcels, bordered to the south by Lot 16, which, in turn, is bordered to its south by Lot 17.  There is a roadway located along the eastern edge of Outlot 2, where it borders the western edges of Lots 15, 16 and 17, which provides ingress and egress to Lot 17.

¶4    Happe acquired a partial interest in Outlot 2 in 1977. The Trust acquired Lots 15 and 16 in 2003. The Kaczors purchased Lot 17 from Wayne and Sandra Geist in 2021. The Kaczors' deed to Lot 17 contains the following easement, which is the subject of this appeal:

> Together with a non-exclusive easement for ingress and egress and for the purpose of constructing a roadway the width of approximately 12 feet on Outlot 2, being 40 feet in width and bounded on the East by Lots 15, 16, and 17 and from the South boundary of Lot 17 *to the water[']s edge*.

(Emphasis added.) Predecessor deeds possessed by various members of the Geist family contained the same language since 1993.

¶5    Throughout the Geists' ownership of Lot 17, members of their family used and maintained a walking trail over Outlot 2 that ran from Lot 17 to the lakefront with a boardwalk over a marshy area of the path. Sometime in the late 1980s, the Geists began putting up a thirty-foot pier each summer that extended from Outlot 2 near the edge of the walking trail into the lake. The Geists tied a boat to the pier, and they and their guests used the pier for fishing, swimming and boating. The pier was still present on Outlot 2 (although not in the water), when the Geists sold Lot 17 to the Kaczors. After purchasing Lot 17, the Kaczors cleared a wider trail over Outlot 2, used planks from the Geist's old pier to reinforce the boardwalk along the trail, and began constructing their own new pier.

¶6    Happe and the Trust filed this lawsuit seeking to enjoin the Kaczors from widening the walking trail and constructing a new pier. The complaint contained claims for: (1) a declaration under WIS. STAT. § 841.01 (2021-22)[1] regarding the scope of the easement in the deed and the parties' respective interests

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

in Outlot 2; (2) trespass under WIS. STAT. § 943.13(1m); (3) interference with an interest in real property under WIS. STAT. § 844.01; and (4) invasion of privacy under WIS. STAT. § 995.50. During the pendency of the lawsuit, the Kaczors acquired a fifteen percent interest in Outlot 2, while Happe and the Trust, collectively, held the remaining eighty-five percent in Outlot 2. The Kaczors responded that they had the right to use the trail and construct a pier pursuant to the terms of the deed or, alternatively, by prescriptive easement.

¶7    The parties filed cross-motions for summary judgment. Upon concluding that the easement in the deed unambiguously provided Lot 17 with access only to the roadway, and not to the lake, and that the claim for a prescriptive easement was moot following the Kaczors' acquisition of a partial interest in Outlot 2, the circuit court granted judgment in favor of Happe and the Trust.

¶8    The Kaczors appeal. They contend that the language of the easement is ambiguous and that there is a reasonable interpretation of it that provides them with access to the lake—which they further contend would include riparian rights to place a pier in the water. In the alternative, the Kaczors contend that they have acquired access to the lake by prescriptive easement.

**DISCUSSION**

¶9    This court reviews summary judgment decisions de novo, applying the same legal standard and methodology employed by the circuit court. *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. We examine the parties' pleadings and supporting materials to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶24, 241 Wis. 2d 804, 623 N.W.2d 751.

4

¶10    When interpreting an easement created in a deed, the court looks to the language of the instrument to construe the relative rights of the parties.  *Hunter v. McDonald*, 78 Wis. 2d 338, 342-43, 254 N.W.2d 282 (1977).  If the language is unambiguous as a matter of law, the court may not consider extrinsic evidence of the parties' intent.  *Rikkers v. Ryan*, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977).  However, if the language is susceptible to more than one reasonable interpretation, then the parties may introduce other evidence to demonstrate the intent behind the language as a question of fact.  *Id.*; *Konneker v. Romano*, 2010 WI 65, ¶23, 326 Wis. 2d 268, 785 N.W.2d 432.

¶11    Here, the parties offer differing interpretations of the language in the deed that the easement is "bounded … from the South boundary of Lot 17 to the water[']s edge" as it relates to the shape and location of the easement on Outlot 2.  Happe and the Trust contend that the disputed language describes the southern boundary of the easement as being calculated by a line that would extend east to west across a forty-foot strip of land from the southern end of Lot 17 toward the lake, but the language does not extend the easement westward beyond the road.  The Kaczors contend that the disputed language describes an easement that, after running alongside Lots 15, 16 and 17, turns west at a right angle at the southern end of Lot 17 and continues all the way to the lake.  We deem both interpretations to be reasonable.

¶12    Happe and the Trust's interpretation of the southern boundary language is reasonable because it fits best with the additional language in the deed that the easement itself is forty feet wide and is intended for the purpose of constructing a roadway for ingress and egress.  The Kaczors' interpretation of the southern boundary language is reasonable because the phrase "to the water's edge" would not need to be used at all if the southern boundary of the easement were

merely a forty-foot horizontal extension of the southern boundary of Lot 17 onto Outlot 2.

¶13 Because we deem the language regarding the easement's southern boundary to be ambiguous, we conclude there is a material factual dispute necessitating a trial as to the intent behind the language. We note that the intent at issue must include that of the owner(s) of Outlot 2 at the time of the initial creation of the easement. The Geists could not convey an easement that extended all the way to the lake unless that property interest had previously been granted to them.

¶14 We are not persuaded, however, that there is also a material factual dispute regarding the inclusion of riparian rights to the beneficiary of the easement. "The use of an easement must be in accordance with and confined to the terms and purposes of the grant." *Hunter v. Keys*, 229 Wis. 2d 710, 714-15, 600 N.W.2d 269 (Ct. App. 1999) (citations omitted). The express purpose of the easement at issue here was to provide a roadway for ingress and egress to Lot 17. While the Kaczors contend that a path through the woods to the lake upon which ATV vehicles could travel would fit within the definition of a roadway, the easement does not include any reference to riparian rights or the construction of a pier or dock. This is not a situation, such as that described in *Konneker*, where riparian rights could be inferred into an easement for lakeside access that was silent as to its purpose. *Konneker*, 326 Wis. 2d 268, ¶27 n.11.

¶15 Finally, we do not address the Kaczors' alternative argument that they are entitled to a prescriptive easement over Outlot 2 to the lake because that claim depends upon establishing that their (and their predecessors') use of the path and pier was inconsistent with the exercise of the Outlot 2 titleholders' rights—both under the terms of the easement and pursuant to whatever terms apply to the rights

of current minority interest owners. The record before us is currently insufficiently developed to make that determination. In particular, neither party tells us whether the Kaczors' fifteen percent interest in Outlot 2 provides them with riparian rights or access to the trail, or whether the majority interest holders still control those rights or will control those rights after a partition of the property. If the Kaczors' minority interest in Outlot 2 does not provide them with riparian rights or access to the trail, then the issue of a prescriptive easement is not moot.

¶16 Accordingly, we reverse the summary judgment and remand with directions that the circuit court take evidence to determine the intent behind the language describing the southern boundary of the easement as extending "to the water's edge." In addition, if it is determined that the Kaczors' use of the trail and pier is inconsistent with both the easement and the terms of their current minority ownership interest in Outlot 2, the court must take additional evidence to determine whether the Kaczors can demonstrate the remaining elements of a prescriptive easement claim.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.